| 49 | 31 |
| 75 | 223 |
| 76 | 177 |
| 49 | 31 |
| 87 | 161 |

THE HOUSTON AND TEXAS CENTRAL RAILWAY CO. v. MARY
A. MOORE.

1. DAMAGE SUITS FOR CAUSING DEATH, &C.—The act of February
2, 1862, authorizing the heirs, representatives, &c., of deceased per-
sons to sue for and recover damages, when the death of the ances-
tor, &c., has been caused or occasioned by the negligence, culpable
or wrongful act of another, was not abrogated by the Constitution
of 1869 on the same subject.

2. CASE APPROVED.—The Houston and Texas Central Railway Co. v.
Bradley, 44 Tex., 171.

3. CONSTRUCTION OF STATUTE—DAMAGE SUIT.—Only one suit can
be brought under the statute for the act causing the death, &c.
Such suit, whether brought by one or all of the parties to whom
suit is allowed, is for the benefit of all the parties entitled to share
in the damages. Successive suits are negatived.

4. PARTIES TO SUCH SUITS—PLEADING.—The better practice is to
join all entitled to participate in the damages as parties; but should
any be omitted, the petition should state all who are entitled to
share in the recovery. When it is evident, from the petition, that
all are not so described, exceptions on that account should be al-
lowed.

5. SAME—PRACTICE.—Where the pleadings show the parties so entitled

to share in the judgment, and an apportionment of the damages among the parties is not made in the judgment, such failure is error.

6. RAILROADS MAY MAKE RULES FOR THEIR BUSINESS.—A railroad company, though a common carrier, has the right to make reasonable regulations for conducting its business.

7. SAME.—A regulation that freight and passengers will be carried on its road in separate trains, is reasonable; and the road has the right to enforce it, when they furnish sufficient accommodations for each.

8. SAME.—A party, against such rule, intruding himself upon a freight train, and suffering injury, cannot recover therefor.

9. USAGE.—Where a railroad company, notwithstanding such rule, habitually permits passengers on its freight trains, the company would be liable.

10. RULES OF RAILROAD—FACTS EXPLAINING SAME.—But where such rule exists, and there are no cars attached to the trains except freight cars, the burden of proving the consent of the road would be cast upon the parties claiming damages for injury to one taking passage on such freight train.

11. CASE IN SUIT.—Where the evidence shows the existence of such rule excluding passengers from freight trains, and that the conductor had no authority to relax the rule, and that the party injured was acquainted with the regulations of the company: *Held*, That it cannot be presumed that the company had contracted to carry such injured party as a passenger; and no action can be maintained for the injury resulting in his death, caused by the wreck of the freight train.

ERROR from Harris.    Tried below before the Hon. James Masterson.

August 10, 1872, William C. Moore, husband of Mary A. Moore, was on a freight train running on the Houston and Texas Central Railway between Hempstead and Houston. At a point about two miles and a half west of Hockley station, the train ran off the track, and Moore received injuries, from the effects of which he died.

March 3, 1873, Mary A. Moore brought suit against the railway company, in her own right, and as mother and natural guardian of William J. Moore, aged about thirteen years, and Mattie F. Moore, aged about eight years. The plaintiff alleged that her husband came to his death by the negligence of the defendants, its agents and servants, under circum-

stances such as to make the defendant liable, and claimed damages to the amount of fifty thousand dollars.

The defendant excepted to the petition, because the proper parties were not shown to have been made; pleaded the general issue; and specially alleged in defense that the car or train on which the deceased was, at the time he received the injury, was a freight train, and that he was on said train without the consent of the defendant, and knowingly in violation of defendant's orders and instructions; that the injuries were the result of the gross negligence and carelessness of the deceased, and not owing to the negligence or carelessness of the defendant, its servants or agents.

The testimony is sufficiently given in the opinion.

Upon the exceptions, the court made the following order, forming part of the judgment: "Exceptions to parties plaintiff sustained so far as minor plaintiffs are concerned, the court holding, that, since the statute of 1870, a suit can only be brought by special guardian, if there is one, and demurrer overruled." And in the instructions, the court directed the jury to find damages to the plaintiff, "and not to her children's loss; for their loss, if liable, the company is liable to them in an action when brought."

The jury returned a verdict for plaintiff for five thousand dollars, upon which judgment was rendered.

Writ of error by the defendant.

*Goldthwaite & Turner*, for plaintiff in error.—Where a party is injured by the wrongful act, neglect, unskillfulness, or default of another, but survives the injury, his right to compensation is plain, without the aid of legislation, and the amount of such compensation, when recovered, becomes a part of his estate. When death ensues, the statute simply prevents the suit which the injured party might have prosecuted if death had not ensued, from abating with the death of the original party, and authorizes the suit for damages to be prosecuted by the surviving parties named in the act,

which the common law did not authorize. The survivors named in the act are simply authorized to bring the suit which the deceased might have brought, had he survived.

Every section of the act pregnantly negatives the construction which would authorize a succession of independent actions by the several persons entitled. Every section is replete with the idea and principle of unity,—unity of plaintiffs, unity of parties, unity of action, and unity of remedy; one suit, one trial, one estimate of damages, one verdict, one judgment, and one division of the amount recovered amongst the parties entitled under the law, who are alive when the judgment is recovered.

That but one action can be maintained under our statutes, is obvious from the phraseology of the whole act. "The person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the *death of the person injured.* Every such action shall be for the sole and exclusive benefit of the surviving husband, wife, child or children, and parents of the person whose death shall have been so caused, and [the suit] may be brought by such entitled parties, or any one of them." When brought by one of the entitled parties, it must be for the use and benefit of all others entitled; for "in every such action the jury may give such damages as they may think proportionate to the injury resulting from such death." Had it been intended that each party entitled should have the right to prosecute an independent suit, certainly the language would have been different. There would have been no necessity for providing that the amount so recovered shall be divided amongst the person or persons entitled under the act. When the action is so brought by one of the parties for the benefit of all others entitled, the party bringing the suit must show affirmatively who the parties entitled are, and that they are the only parties entitled; for if this be not required, how can the amount so recovered be divided amongst such of the parties entitled "as shall then," at the date of the judgment, "be alive, in

such shares as the jury shall find and direct"?   Again, that not more than one action shall lie for and in respect of the same subject-matter of complaint, is apparent also from the fourth section of the statute.   The action shall not abate by the death of either party to the record.   If the plaintiff die pending the suit, where there is only one plaintiff, some one or more of the parties entitled to the money recovered may be substituted; and the suit prosecuted to judgment in the name of such party or parties for the benefit of the persons entitled. It is only because several independent suits cannot be maintained that this provision is made, because one suit only can be prosecuted for the benefit of all the parties, however numerous they may be.   No one but a party entitled under the act can be a party to the suit.   The suit of a sole surviving plaintiff must abate upon his death; for the money recovered by the judgment can only go to the parties named in the act, or such of them as shall then, at the date of the judgment, be alive.

Suppose the deceased had left surviving him both father and mother, dependent upon him for support, would it be contended that each would have the right to maintain a separate suit?   Or had left a wife and eleven children, would it be contended that twelve independent suits might be brought by the twelve different parties entitled, and the question of damages submitted to twelve different capricious juries? Does not such a proposition savor of the ridiculous?   Is it not absolutely absurd?   And yet is it not exactly what the defendant in error is endeavoring to maintain before this court?   If Mary A. Moore, the widow, can properly maintain this suit, cannot any child maintain its suit?   Cannot the father and the mother do likewise?   But one action can be brought; and in that one action the rights of every party entitled under the act must be adjudicated.

The right of action which the common law denied is fully, adequately, and completely given in the first section of the statute under consideration.   Turn to it:

" Section 1. If the life of any person is lost, by reason of the negligence or carelessness of the proprietor or proprietors, owner, charterer, or hirer of any railroad, steamboat, stage-coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, gross negligence, or carelessness of their servants or agents; and whensoever the death of a person may be caused by wrongful act, neglect, unskillfulness, or default, and the act, neglect, unskillfulness, or default is such as would; if death had not ensued, have entitled the party injured to maintain an action for such injury, then, and in every such case, the person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

Were the statute to go no further, it would, as we have said, amply secure the right of action. The ordinary form of action would then be resorted to, very properly, as the remedy for the enforcement of the right so created and given. The claim for damages would be recoverable in the same manner, and by the same legal proceedings which are resorted to for the recovery of every other claim due the decedent's estate.

Then the result of the litigation—the amount recovered— would be assets in the hands of the executor or administrator for the payment of debts, or be subject to partition among the heirs, according to the statute of descent and distribution.

Now it is provided, by this statute, that the particular persons named in the act shall be the beneficiaries of the suit for their sole and exclusive benefit.

Then if the estate of the deceased were opened by administration, no one but the executor or administrator could maintain it.

Now it may be maintained by any one of the parties entitled for the period of three months after the death of the

deceased; but when prosecuted by one, it must be prosecuted for the benefit of all the parties entitled.

Then, if there were no necessity for administration, all persons having an interest in the subject-matter of the litigation would be necessary parties to the suit.

Now, as we have seen, it is otherwise provided by the statute.

Then the parties entitled would not be limited to three calendar months in bringing their suit.

Now, as we have seen, they are so limited.

Then the ordinary period prescribed by the statute of limitation would be the only bar to the action.

Now it must be brought within one year of the death of the deceased.

Then the right of action and recovery would not be limited to those who are alive at the time the judgment is rendered.

Now every party named in the act as entitled may die before judgment is rendered, and the deceased, whose death was so caused, may have a score of grandchildren; yet they would not be entitled to judgment, for they are not parties named in the act as entitled.

Then minors could properly appear by guardian, or next friend, as in all other causes.

Now the statute makes no provision for such appearance, but negatively excludes such an idea, by making provisions inconsistent therewith:

"The statute authorizing the action is in derogation of the common law, and must be strictly construed. The cause of action thereby created can be prosecuted only within the time, only by the persons, only in the manner designated in the act. When a statute gives a right, and at the same time provides a remedy for the enforcement of that right, that remedy must be pursued." The defendant in this case demands that the statute shall be strictly pursued in this case.

Mr. Sedgwick, in his treatise on Statutory and Constitu-

tional Law, says: "When a right originally exists at common law, and a statute is passed giving a new remedy, without any negative, expressed or implied, upon the old common law, the party has his election, either to proceed at common law, or to proceed upon the statute. The statutory remedy is merely cumulative." And he cites many instances, and proceeds: "But, on the other hand, where by statute a new offense is created, and a new penalty is given for it, or a new right is given, and specific relief given for the violation of such right, the punishment or the remedy is confined to that given by the statute." (Sedgwick on Stat. and Const. Law, p. 401, *et seq.*)

In Thurston *v.* Prentiss *et al.*, 1 Manning, (Mich.,) 200, the court said: "It is a well-established principle of law, that where a statute gives a new right, and prescribes a particular remedy, such remedy must be strictly pursued, and the party seeking the remedy is confined to that remedy, and that only;" citing 1 Com. Dig., 44, 47, 48; 9 Bacon's Abr., 259, 260; 2 Burr., 803; 1 Blackf., 405; Saund. Pl. and Ev., 829; 5 Johns., 175; 3 Mass., 307; 5 Id., 514.

Beckford *v.* Hood, 7 Durnf. & E., 616, is also cited. This was a copyright case, in which Lord Kenyon said: "The statute having vested the right in the author, the common law gives the remedy by action on the case for the violation of it. Of this there could have been no doubt made, if the statute had stopped there. But it has been argued, that as the statute, in the same clause that creates the right, has prescribed a particular remedy, that, and no other, can be resorted to; and if such appears to have been the intention of the legislature, I should have subscribed to it, however inadequate it might be thought."

Moncrief *v.* Ely, 19 Wend., 405, was an action of assumpsit, for the support of an illegitimate child. Chief Justice Nelson said, in delivering the opinion of the court: "I regret that my examination of this case has not enabled me to come to the conclusion that the judgment below ought to be re-

versed, as the moral obligation and justice of it are strongly against the defendant. But it cannot be matter of doubt, that, anterior to the statute of 18 Eliz. and 6 Geo. II, the putative father was under no legal liability to maintain his illegitimate offspring, and as that liability has been wholly created by statute, the remedy there prescribed to enforce the duty must be followed. We have copied these statutes, and others on the same subject, and they afford ample provision, both for the public and all individuals concerned."

We submit, that on the merits of this case, the plaintiff is not entitled to recover. The defendant is not liable in damages. The deceased, at the time of the happening of the accident, was not a passenger on the defendant's cars. He was not rightfully thereon. The defendant owed him no duty. He knew the defendant's regulations forbade his being thereon. He knew that the defendant's servant and agent, the conductor, was acting *ultra vires,* beyond the scope of his employment, in permitting him to be thereon. Knowingly and willfully, the deceased became a trespasser on the defendant's cars, and without the defendant's knowledge and consent; for the defendant is presumed to have knowledge only of the acts of its agents done rightfully in the course of their employment. The deceased brought destruction upon himself by his own act—an act which he knew to be wrongful—an act in which the defendant had no complicity.

Counsel discussed carefully the facts and instructions of the court, and cited Dunn *v.* Grand Trunk R. R. Co., 58 Me., 187; 2 Redfield's Am. Railway Cases, 290; Murch *v.* Concord Railway, 29 N. H., 9; Elkins *v.* B. & M., 3 Foster, (23 N. H.,) 275; Steamboat New World *et al. v.* King, 16 How., 469; Smith on Mer. Law, 559; Pope *v.* Nickerson, 3 Story, 475; Citizens' Bank *v.* Nantucket Steamboat Co., 2 Story, 32; 2 Pars. on Ship. and Adm., 7; Philadelphia and Reading R. R. Co. *v.* Derby, 14 How., 468; Sleath *v.* Wilson, 9 Car. & P., 607; Lackawanna and Bloomsburg R. R. Co. *v.* Chenewith, 52 Penn., 382; Robertson *v.* N. Y. & E. R. R. Co., 22 Barb.,

91; Eaton *v.* Delaware, Lackawanna and Western Railroad (New York Commission of Appeals, Law Register for November, 1874, p. 665).

*Waller, Cook, Harris & Masterson,* for defendant in error.

I. The exception to the parties does not state what parties are referred to or desired by the defendant in the lower court, and it is only in the final judgment that the exception is acted on by the court, and it is there sustained, as far as acted on at all; and the charge of the court, limiting the amount of damages to the injury sustained by Mary A. Moore, and excluding from the estimate the injury suffered by the children, was a necessary consequence of the sustaining the exception; and certainly the plaintiff in error will not be heard to complain that its own exception was sustained, and will not be permitted to assert that the court erred, when, if error was committed, it was in favor of the company, and limited the damage to the loss sustained by one plaintiff, instead of extending it to the loss suffered by all. If the exception had not been sustained, and the charge had not been given, it is apparent that the verdict would have been for a much larger amount—probably three times what it was. It is apparent that the plaintiff in error was benefitted, and not injured, by the ruling of the court. If there was error, the children were the only persons injured; and as they are not complaining, and have not sought a reversal of the case, the plaintiff in error, the party benefitted, cannot assign error committed at its instance against them as a ground for reversal as to it. (Herndon *v.* Bremond, 17 Tex., 434; Hendrick *v.* Cannon, 5 Tex., 248; Cheatham *v.* Riddle, 8 Tex., 166.)

It is stated that the court erred in overruling the exception in part. The record does not show such to be the fact. The exception itself is general in its terms, "that proper parties are not shown to have been made." The only order of court upon it is that sustaining it; hence that assignment will not be noticed. It is assumed by plaintiff, that if this judgment

is sustained, the children of Moore may recover in another suit. If, as asserted by plaintiff in error, only one judgment can be recovered in a case like this,—if that is true, and the children should sue again, the railroad company could plead this judgment in bar; and if they complain that they recovered nothing, the company could well reply: The jury gave no verdict for you, and if the court erred in its charge to the jury so that you recovered nothing, you should have appealed the case and had the error reversed, and should not have brought a second suit. If, on the other hand, distinct suits may be brought by the different parties entitled, then the company cannot complain that all were not in this suit; and certainly not when we bear in mind that the children were excluded from participating in the estimate of damages at the instance and exception of the plaintiff in error.

The very terms of the law, quoted by the counsel for plaintiff in their brief, are that the suit may be brought by any one of the entitled parties. (Paschal's Dig., art. 16.)

Mary A. Moore, then, being one of the entitled parties, clearly had the right to maintain her suit. The act referred to is not the only authority for suit. We submit, that the failure on the part of the railway to keep the road-bed in order is a willful omission of duty, which resulted in the homicide of Moore, for which damages could be recovered by his widow, independent of the legislative act. (Const., art. 12, sec. 30.) And if her co-plaintiffs were, by the charge of the court, excluded from participating in the damages, they are the only persons who can complain, and they not having appealed, this court cannot reverse the judgment on account of error as to them. The plaintiff in error, in his brief, for the first time asserts that the right of action of Mary Moore was barred in three months, and was not brought until seven months. This court will not entertain a plea of limitation, even when well founded, if not presented in the court below and not appearing in the record, but presented for the first time in the brief of counsel; and in this case we think limit-

ation would have no application, even if it had been urged in the District Court. The fair construction of section 2 of the act, (Paschal's Dig., art. 16,) is that the parties entitled only are the persons who can sue in the first three months, and if they do not sue in that time, either they or the executor or administrator may sue at any time within the one year. The suit by an executor or an administrator must not be until after three months, and within one year; but the suit by the parties themselves may be at any time within the year. This question is not presented in the record in any way, and we submit that the plea would have been properly overruled if it had been made in the District Court in due order of pleading.

II. It is in evidence that Moore was on the train by permission of the conductor of the train, and it is not controverted that the verdict of the jury is conclusive of the fact of negligence on the part of the company, in having a broken rail and rotten ties on its road-bed, and that the broken rail and rotten ties were the immediate cause of the injury. The counsel for plaintiff in error state, in their brief, that the whole burden of their defense, was that Moore was on the train without the consent of the company, and asserting that the conductor of the train was not acting within the scope of his authority in consenting to Moore traveling on the train, and therefore the company was not liable for negligence; and plaintiff refers to decisions that show beyond controversy, that, unless Moore was absolutely a trespasser, the rulings of the court below are correct and the judgment right. We refer to Dunn v. Grand Trunk Railroad, 58 Me., 187; Steamboat New World v. King, 16 How., 469; Philadelphia and Reading Railroad Co. v. Derby, 14 Id., 468.

We invite the attention of the court to these cases, as directly decisive of the point at issue, viz., the power of the conductor to bind the company, by permitting a passenger to ride on a freight train.

We submit, that the facts of this case clearly show that Moore was rightfully on the train; and the necessary conclu-

sion is, that the company would have been liable for damages
even if their liability was limited to that ordinarily incurred by
common carriers.   It is not, however, so limited.   The stat-
ute does not require that there shall be a common-carrier con-
tract between the parties, in order to make the company re-
sponsible for neglect or carelessness which results in the death
of a person.   There need be no contract between the parties.
All that the statute says, in substance, is that if the life of a
person is lost by reason of negligence or carelessness, or
wrongful act or default of the owner of a railroad, &c., ser-
vants or agents, the company shall be liable for damages, not-
withstanding the death of the party injured.   (Paschal's Dig.,
art. 15.)   The only question, under the statute, is,—Was the
death of Moore caused by the negligence or carelessness of
the railroad company, its servants or agents?

The verdict of the jury is conclusive as to the fact of neg-
ligence and carelessness, and that Moore's death was caused
by it; hence it is immaterial whether Moore was or was not
a passenger with a contract with the company that the law
attaches to common carriers.   He certainly was a person
killed by the negligence or carelessness of the company in
not keeping its road-bed in order; and that was all the law
required to make the company responsible for damages.

Section 30 of article 12 of the Constitution, and the act of
the Legislature, do not limit the responsibility of a corporation
or individual causing the death of a person to that of a com-
mon carrier.   They go farther, and hold them responsible
in damages whenever a death of a person is caused by their
willful act or omission, or by negligence, carelessness, wrong-
ful act, or default.   The liability as common carrier still
exists in our State.   In addition to that, the law extends the
liability to all persons or corporations causing the death by
carelessness or negligence, whether such persons are common
carriers or not.

MOORE, ASSOCIATE JUSTICE.—It is obvious, from an inspec-

tion of the record, that this action was brought under the act of February 2, 1862, authorizing the heirs, representatives, or relatives of deceased persons to sue for and recover damages, when the death of the ancestor, relative, testator, or intestate has been caused or occasioned by the negligence, culpable or wrongful act of another; or at least that it was so treated and regarded in the court below. Evidently, there is a manifest difference in respect to the parties by whom the action may be maintained, and the character of damages which may be recovered, when the suit is under the Constitution instead of the statute. (Paschal's Dig., art. 15, *et seq.;* Const. 1869, art. 12, sec. 30.) That there is no such conflict, however, between the provisions of the statute and Constitution, so that the former is abrogated by the latter, seems to be decided, by the majority of the court, in the case of Houston and Texas Central Railway Co. *v.* Bradley, (guardian, &c.,) 45 Tex., 171; although it is said in the opinion that "the effect of the constitutional provision on the act of 1862 is not raised by the pleadings, and not discussed in the briefs." That action, however, like the present one, though based upon the statute, was brought after the adoption of the Constitution. If the statute was repealed by the Constitution, whether the effect of such repeal had been raised in the pleading or discussed in the briefs or not, as there would have been no authority of law for such an action as authorized by the statute, the judgment could not have been affirmed. The point in the mind of the judge by whom the opinion was prepared, to which reference is had in the remark which I have quoted, relates, I suppose, to a question which might have been made in that case, touching the right of parties entitled to an action under the Constitution as well as the statute, to recover in the same suit exemplary damages as well as such as are given by the statute.

But if we concede that a recovery might be had in one action for all such damages as a party may be entitled to, either under the Constitution or statute, and that separate

and consecutive actions may be maintained by the different parties named in the Constitution, as appellee did sue for or recover exemplary damages, whether the court below erred in its ruling upon appellant's exceptions, or whether the judgment in appellee's favor for the entire damages assessed by the jury, leaving appellant, in the opinion of the presiding judge, subject to other actions of like character by the children of the deceased husband, must be determined by reference to the statute upon which, as we have said, the action and judgment are based.

The plain and obvious purpose and effect of the statute are to give to the parties therein named an action similar in character to that which might have been maintained by the party injured if death had not ensued, when death ensues by the means or under the circumstances indicated in it. But, as counsel for appellant says, "the act pregnantly negatives the construction which would authorize a succession of independent actions by the several parties entitled." Unquestionably, it may be brought by all or any one of the parties; but whether brought by one or all, it is brought for the sole and exclusive benefit of the surviving husband, wife, child or children, and parents of the deceased, who are alive at the date of the recovery. If the suit is brought by only one of the parties entitled, and he dies pending the action, it does not abate, but it may be prosecuted to judgment in the name or names of some one or more of the parties entitled. Unquestionably, all parties entitled to share in the recovery may, and no doubt should, more appropriately join in the suit; but if some of them fail or neglect doing so, any one of them may maintain and prosecute it; but he must do so for the benefit of the other parties as well as himself. If a recovery is had, whether the suit is brought by one or all, the amount recovered " shall be divided amongst the persons entitled under the act, or such of them as shall then be alive, in such shares as the jury shall find and direct."

To enable the jury to make this division, where all parties

entitled have not joined in the suit, the petition should show all amongst whom the amount recovered should be divided; and the judgment should award to. each of the parties for whose benefit the action is brought, the share as found and directed by the jury. When it appears, from an inspection of the petition, that it does not contain the proper averments to enable the court to distribute the damages as contemplated by the statute, it is subject to exception; and when the facts are sufficiently exhibited by. the pleading, but the judgment fails to divide the damages assessed by the jury among the parties as directed by the statute, it is error.

It is also insisted, by the appellant, that the judgment is erroneous and should be reversed, because appellee's husband, when injured, was not a passenger, but was, as he well knew, wrongfully on appellant's cars.

It appears, on the face of appellee's petition, that the deceased, when he received the injuries which caused his death, was on a freight train. The evidence shows that there was no person on said train but the employés of appellant, except the deceased, who had been an engine-driver, running a train on appellant's road for a year or two, until about a month or six weeks previous to his death, and well knew that passengers were not allowed to travel on freight trains on appellant's road; that the officers in charge of such trains were forbidden to allow parties to ride upon them without a special pass from the general superintendent of the road; that no such pass could be gotten without a release of appellant from damages in case of accident; that this was the condition upon which permits to ride upon freight trains were given, because of the greater risk of accidents to passengers on freight trains than on passenger trains, and because the company would not assume such risks on behalf of persons desiring to travel in this unusual and extra-hazardous manner.

On the other hand, it cannot be doubted that deceased was riding on the train with the knowledge and consent of the

conductor. But whether he paid fare, or had a pass or permit to travel on a freight train, is not shown.

Under this state of case, the question to be determined, is whether appellant had assumed the risk of a common carrier of passengers in respect to the deceased, while thus riding upon its freight train; or, in other words, whether deceased was, in contemplation of law, a passenger on appellant's train; or if not such passenger, strictly speaking, whether the assent of the conductor to his getting upon the train gave him the right to ride upon it, and render appellant responsible for any injury done him while thus on the train, to which he in no manner contributed.

Appellant, as a railway company, is a common carrier of both freight and passengers; but has, unquestionably, the right to make reasonable regulations for conducting its business; and parties dealing with it must conform to such regulations. That a regulation of a railway company, that freight and passengers will be carried on its road in separate trains, is a reasonable regulation, can hardly be doubted by any one. Indeed, it seems a highly salutary regulation, for the public as well as the company. Nor can it be controverted, when a railroad company makes other suitable provision for passenger travel, that no one has the right to demand that he shall be allowed to ride in its trains devoted exclusively to the carrying of freight. If a party, in violation of such regulation, and without the consent of the company, forces himself into one of its freight trains, it surely cannot be supposed that the company could be held responsible to him in its character as a carrier of passengers; or that the party who should thus contribute to the injury which he might sustain while thus wrongfully in the train, may maintain an action against the company for such injury. Unless he could, an action cannot be maintained under the statute by his heirs, representatives, and relatives, in case of his death.

It may be true, where a railroad company habitually permits passengers to travel on its freight trains, notwithstand-

ing it may by regulation prohibit it, that the company will incur the same responsibility to such passengers as if they were on the regular passenger cars.   But when it is shown that the regulations of the company absolutely forbid passengers riding on freight trains, and where there are no cars attached to such trains except those ordinarily accompanying trains exclusively for freight, or such as, by their appearance and manner in which they are fitted up, could not be properly regarded as inviting passengers into the train, the burden of proving that the party injured was justified in going upon such train as a passenger, properly devolves upon those who sue for damages resulting from injuries sustained by him while on such train.   Do the facts in this case show that appellant permitted passengers to travel on its freight trains, notwithstanding its regulation prohibiting it, to an extent or in a manner to warrant the deceased in supposing that he was authorized to get upon its freight train as a passenger?   Certainly they do not.

If, then, it can be inferred that the deceased was properly on the train, it must be upon the supposition that he had a special permit; or that the conductor of the train was authorized to annul or waive the regulation of the company prohibiting passengers from traveling in freight trains.   But the evidence shows that the conductor had no such authority, and that the deceased must have known that he had not.

This is not the case of an ordinary traveler, unacquainted with the regulations of the railroad, or if acquainted with them at all, only in a general way; or of one who is uninformed as to the powers and functions of the officer in charge of the train, and who, if he knew that passengers had been sometimes carried by such train, might suppose that the officer in charge of it had authority to relax or set aside the rule in special cases; which seems to be the extent to which the case of Dunn *v.* Grand Trunk Railway, 58 Me., 187, relied upon by appellee, goes,—but which, even on its facts, seems to be greatly questioned by Judge Redfield, the distinguished

commentator on railroad law; (Redf. Am. Railroad Cases, 490;) and to have been denied by the New York Commissioners of Appeal, in the case of Eaton v. The Delaware, &c. Here, the deceased, who, only a short time previously to his going on the train, had been in the employment of appellant, must have known that the conductor was forbidden to allow him to travel as a passenger upon the train.

It cannot, in view of all the facts of this case, be said that appellant had undertaken or contracted with the deceased to carry him as a passenger over its road, or that we are warranted in saying the *prima-facie* presumption that the deceased was wrongfully upon appellant's train, when he received the injuries which caused his death, has been rebutted; and, if death had not ensued, that he could have maintained an action against appellant on account of the injuries which he received by the wreck of the train. The judgment must therefore be reversed and the cause remanded. And it is so decreed.

REVERSED AND REMANDED.