GALVESTON, HARRISBURG AND SAN ANTONIO RAILROAD CO. V. CECILE LE GIERSE.

1. SUITS FOR DAMAGE FOR CAUSING DEATH, &C.—The right to such actions in our courts being given by statutes, parties who seek to avail themselves of their benefit must be governed by their provisions.

2. STATUTORY REMEDIES—DAMAGE SUITS.—From the language of the act of February 2, 1860, (Paschal's Dig., art. 15,) and the change in the phraseology of the Constitution of 1876 from that of 1869, in omitting the words "separately and consecutively," touching such suits, it was evidently the intention of the Legislature that but one suit should be allowed in behalf of the widow and children for causing the death of the husband, &c., for the benefit of all persons jointly interested.

3. SAME.—The amount so recovered in the one suit for causing the death of the husband, &c., must be apportioned by the jury (or court) among those entitled to the judgment.

4. PARTIES.—If all the parties in interest are not before the court as actual plaintiffs, the suit should proceed in the name of one or more for the use also of the others interested.

5. PARTIES—NON-JOINDER—DEMURRER.—If the non-joinder of parties be apparent of record, it can be reached by demurrer.

6. SAME—PRACTICE.—It was error to allow judgment in favor of the widow for damages for the death of her husband, when the record showed that he had left minor children who were not represented in the suit.

7. CONSTITUTIONAL LAW—STATUTE CONSTRUED.—This court will not hold unconstitutional the act requiring conductors of passenger trains to stop not less than five minutes at each station, (Paschal's Dig., art. 6532,) unless it should plainly appear that the vested charter or other important rights of the railroad company were unduly prejudiced thereby.

8. CONTRIBUTORY NEGLIGENCE.—While the company may have been guilty of negligence in not waiting five minutes at the station, such negligence would not justify the injured party in attempting to get aboard the cars while in motion, if such act, under the circumstances, was negligence and contributory to the injury.

9. CHARGE OF COURT—CONTRIBUTORY NEGLIGENCE.—It was error to instruct the jury so that they might infer, that if the train did not stop the five minutes, the company, under the law, was liable, irrespective of the question of contributory negligence on the part of the injured man.

10. CHARGE OF COURT—PRACTICE.—In damage suits, where, if exemplary damages are given, they are in the nature of penalties, the

charge of the court is not entitled to the same liberality of construction as in ordinary civil cases.

11. CHARGE OF COURT.—Where the general charge of the court contains a distinct and independent proposition on a material point calculated to mislead the jury, such injury is not remedied by the fact that it may, taken in connection with instructions asked by the party affected injuriously by the charge, present the law of the case.

12. DAMAGE SUITS, STATUTES UPON.—Section 26 of article 16 of the Constitution of 1876, giving exemplary damages, is cumulative of the act of the Legislature. (Paschal's Dig., arts. 15–18.) Together, they give compensatory and exemplary damages.

13. PRACTICE IN SUCH SUITS.—Where actual and exemplary damages are claimed, the better practice is, that they should be claimed by proper allegations, in the nature of distinct counts, on different causes of action. The court should instruct the jury according to the facts and as to the law governing them as to the measure of damages; and the jury should, in the verdict, ascertain what is actual and what exemplary.

14. MEASURE OF DAMAGES—PRACTICE.—The rules by which damages should be measured are questions of law; the amount, the jury must ascertain from the rules applied to the facts.

15. WITNESS—CONVERSATIONS NOT RES GESTÆ.—A witness was asked as to declarations by another witness, (who had already been examined,) made in the presence of the deceased a short time after the accident causing his death : on objection, held inadmissible, because the other witness had not been asked as to it, so as to lay a predicate to impeach him ; nor was it shown to have been participated in by deceased, or sufficiently connected with the accident to render it *res gestæ*.

APPEAL from Colorado.   Tried below before the Hon. Everett Lewis.

June 11, 1877, in the District Court of Colorado county, Cecile Le Gierse, surviving wife of Louis Le Gierse, deceased, having qualified as survivor, and the mother of two minor children, the issue of her marriage with the deceased, sued the Galveston, Harrisburg and San Antonio Railroad Company for damages, for causing the death of said Louis Le Gierse while, as a passenger, he was attempting to get aboard the train of defendant at Borden, a station in said county.

It was charged that the train was checked in speed, apparently came to a halt, and was immediately started, and that Louis Le Gierse was attempting to get aboard the train, when,

by the negligence in the management of the train,—it being started before the expiration of five minutes and its speed accelerated,—he was thrown from the cars and his death caused.

Defendant demurred; denied specially the acts of negligence charged, and alleged performance of all the usual and necessary precautions against danger, charging the acts of Le Gierse as contributory to the result; and general denial.

There was no notice of the minors taken in the proceedings.

The testimony is voluminous, but shows, substantially, that on the day alleged Le Gierse and Morris were at Borden, waiting for the train, at a store fifty or seventy-five yards from the depot. As the train approached, the whistle was blown, at the tank, a distance of two hundred yards or over. They heard the signal and started to the station. When the train reached the station, no one was there except the agent, who did not know that Morris and Le Gierse were at Borden. The conductor got out of the cars upon the platform. The mail was delivered and received and letters exchanged. No passenger offered for transportation. The cars moved on, and after the conductor had gone into the cars, and had passed nearly the length of a passenger coach, Morris came into the car by the same door the conductor had entered, and moved rapidly toward him, and upon reaching and speaking to him, the conductor had the train stopped and backed. Le Gierse was found lying on the ground near the track, fifteen or more steps east of the depot platform, severely injured.

He was taken up, placed upon the train, and carried to Columbus, where he died a few days afterwards from the effects of his injuries. After he was taken into the car,—in response to an exclamation by the conductor, "Great God, Mr. Le Gierse, why did you not give me some signal, or let me know that you wanted to get on the train? I would have stopped for you at any time,"—Le Gierse said, "I am suffering very much; nobody is to blame;" or, "I blame no one."

A witness testified that, when the train was about starting, he saw two men, about sixty or seventy feet from the store, running towards the train.

Morris testified that he and Le Gierse ran upon the platform and attempted to get on the train while it was in motion. He further said, that if he and Le Gierse had been upon the platform when the train arrived, he thinks they could have got on without difficulty.

There was conflict of testimony as to whether the train came to a stop at the station, whether the usual signals and precautions were observed, and as to the duration of the halt made at the station.

In the course of the trial, and after it had been shown by testimony that Morris and Le Gierse were together at the time Le Gierse attempted to get upon the train, and had been together previous to that time, and that Morris was in the car in which Le Gierse was placed after the accident, defendant asked a witness (Howe) the question: "Did or did not, at the time first mentioned, Morris say, in your hearing, and in the presence and hearing of Le Gierse, that he (Morris) and Le Gierse had left the house or store on the hill after the ringing of the bell for the departure of the train, and that there was nobody to blame but themselves?" To which plaintiff objected, and the objection was sustained.

The court instructed the jury—

"1. If the jury believe from the evidence that the plaintiff, Cecile Le Gierse, and mother of the two minor children, as mentioned in her petition, and that the said Louis Le Gierse died on or about the 19th day of March, 1877, from injuries received by him through the negligence, carelessness, or unlawful conduct of the Galveston, Harrisburg and San Antonio Railway Company, its agents or employés, in the control or management of the train of said company, whilst the said Le Gierse was a passenger on such train, or offering or attempting to take passage thereon, and that such injuries were not caused by the negligence, carelessness, or recklessness of

the said Le Gierse, then and in such case they will find for the plaintiff, and assess the damages in such amount as in their judgment, upon the evidence, will be proportionate to, and will compensate her for, the injury sustained, not to exceed, however, the amount claimed in the petition."

"2. If the jury believe that the conductor of said train, then at Borden, was in the habit of stopping at Borden station less than five minutes, and that the defendant had knowledge of said custom, or had no regulation requiring the said employé to stop said train at said station five minutes, and at the time Le Gierse attempted to board said train the conductor had not caused said train to stop at said station five minutes before he set the same again moving forward; then in such case the defendant would be responsible for the action of the said conductor; and should the jury believe from the evidence that the accident resulted from the management and movement of said train, and not from the negligence of the said Le Gierse, they should find for plaintiff, subject to the preceding and following instructions."

3. Is set out in the opinion.

4. Related to custom to take passengers at that station without tickets, &c.

5. Defined negligence, and not excepted to.

At instance of defendant—

"7. Ordinary care is incumbent on a party who has suffered from a collision with a railway train; and when both the railway company and the individual are in the wrong, neither can recover of the other. The law will not apportion the damages suffered by wrong-doers. Hence, if the jury believe that Le Gierse was wanting in ordinary care, and was thereby injured, then the plaintiff in this case cannot recover."

"8. The jury will also inquire whether or not it is customary for men of ordinary prudence to attempt to get on trains when in motion; and if they find it is not customary for ordinarily prudent men to attempt to get on trains while in motion, and that Le Gierse acted contrary to such custom.

in attempting to get upon defendant's train, then and in that case they will find for defendant."

The court refused the following instructions, asked by the defendant:

"5. When a party is intending to get upon a railway train, attempts to do so while the train is in motion, and is injured in such attempt, he is guilty of such negligence as would prevent his recovery in a suit for damages against the railway company; nor could the representatives of a person thus injured recover, where the injured party has died in consequence of injuries so received."

"6. If the train has left its regular station, and has moved beyond such station or the platform erected for the accommodation of passengers, and is moving and increasing its speed, and the person injured attempted to get on the train beyond such station or platform, then the act of such party making such attempt is gross negligence on his part, for which the railway company is in no way responsible." * * *

9. That the law requiring railway trains to stop at each station for five minutes, had no application to the case, and that if it had not made such stop, still, "if the party should attempt to jump or get upon the train while in motion, it would then be proper for the jury to find whether such attempt would be contributory negligence on his part."

"10. That if the railway company gave the customary and usual signals for starting, and that the train moved in accordance therewith, and Le Gierse attempted to get upon the train while in motion, plaintiff could not recover, although the train may have been started too soon."

Additional charge asked by defendant and refused:

"If the jury find for the plaintiff, then they will estimate the damages to the plaintiff by reason of the death of her husband; and in doing this, the only question for them to determine is the pecuniary loss to the plaintiff. The feelings of the plaintiff, her wealth or poverty, or any other fact than the pecuniary injury, cannot be considered in assessing

the damages, and the loss in a pecuniary way will be determined by the jury from the evidence alone."

The demurrers were overruled. Verdict and judgment for the plaintiff for $19,000. Motion for new trial was overruled, and the defendant appealed.

The errors assigned are—

1. Overruling the demurrer of defendant.

2. Excluding the testimony of Howe to the conversation between Morris and the conductor, in Le Gierse's presence, soon after the accident.

3. The second charge to the jury, because the same is misleading, contrary to law, and upon the weight of evidence.

4. The court erred in its fourth charge to the jury.

5. Error in refusing the fifth, sixth, ninth, eleventh, twelfth, and last charges asked by the defendant.

6. Overruling the motion for new trial. (The second ground for new trial, and referred to in the opinion, is as follows: "The court erred in that part of its first charge to the jury, in relation to the amount of damages, in failing to give to the jury any guide as to the measure of damages, although asked by the defendant to give them such a guide.")

7. The verdict of the jury and the judgment of the court are insufficient in law and fatally defective, in that the shares of the persons entitled, viz., Mrs. Cecile Le Gierse and the two children, Cecile and Edith, in the amount recovered, are not found, directed, and divided, as required by the statute in such cases made and provided.

*E. P. Hill*, for appellant.

I. There was a non-joinder of parties plaintiff. The minor children were necessary parties. (Paschal's Dig., arts. 15–17; Calvert on Parties, pp. 13, 30, 34, 62.)

This defect, being apparent on the record, would be reached by demurrer. (Dicey on Parties, 13.)

II. The statute (Paschal's Dig., art. 6532) is unconstitutional.

The right to pass such a statute is referable only to the police power of the State. The maxim, *sic utere tuo ut alienum non lædas,* lies at the foundation of that power, and with respect to it the State has no greater rights over corporations than over natural persons. ( Cooley on Const. Lim., p. 577.)

Under the police power, the State may impose such regulations as are necessary for the safety, not such as are required merely for the convenience of the public. ( The State *v.* Noyes, 47 Maine, 210.)

"The true limit of the police power of the State over such corporations, was stated in The State *v.* Noyes, 47 Maine, 210." (Sedg. on Stat. and Const. Law, 608, note.)

Statutes requiring the bell rung or whistle blown at crossings, to put up signs, to run slow through the streets of towns, and similar regulations, are all clearly in the interest of the public safety, because in the nature of things such or similar precautions must be used without statutes requiring them. The railroad company is bound to use due care in respect to such matters, irrespective of any statute on the subject, and the Legislature only undertakes to prescribe precise and practical rules defining and enforcing the duty.

Is the regulation imposed by the statute requiring passenger trains to stop not less than five minutes at every station, a regulation necessary for the safety of the public, or is it merely intended to serve the public convenience?

"The maxim, *sic utere tuo ut alienum non lædas,* is that which lies at the foundation of the power, and to whatever enactment affecting the management and business of private corporations it cannot fairly be applied, the power itself will not extend." (Cooley on Const. Lim., 576.)

The time and place of receiving passengers which passenger carriers are bound to observe and conform to, are those which they hold out to the public, and which thus become in the nature of a special contract. (Ang. on Com. Car., sec. 527*a.*)

The duty of stopping trains long enough for passengers to get off and for all persons applying for passage to get on, is

a duty growing out of the relations of a railroad company to the public as a passenger carrier, and it is liable for an injury to any person caused by its non-observance of that duty.

If it be necessary to stop five, ten, or thirty or more minutes on any occasion, it must be done, and no statute can add to or detract from the obligation to do so. The duty is precisely and practically defined, and any statute prescribing a fixed time for stopping, on all occasions, must of necessity be arbitrary in principle and unreasonable in its operation.  *  *  *

Counsel also cited and discussed Insurance Co. v. Mosley, 8 Wall., 397; Railway Co. v. Murphy, 46 Tex., 356; Field on Dam., sec. 178; Railroad Co. v. Jones, 5 Otto, 442; Field on Corp., sec. 554; March v. Walker, 48 Tex., 375; Ang. on Com. Car., sec. 592; Willis v. Lewis, 28 Tex., 191; Pleasants v. Fant, 22 Wall., 121; Edwards v. Kearzey, 6 Otto, 640; Bank v. Bank, 10 Wall., 604; McKeon v. Railroad Co., 42 Mo., 79; Cooley on Torts, 660.

*Ballinger, Jack & Mott* and *Foard & Thompson*, for appellee.

I. The demurrer was properly overruled. There was no non-joinder manifest in the petition. (Paschal's Dig., arts. 15, 1473; State Const., Gen. Prov., sec. 26; Prewitt v. Farris, 5 Tex., 375; Williams v. Warnell, 28 Tex., 611; DeWitt v. Miller, 9 Tex., 245; Horne v. Black, 24 Tex., 293; Williams v. Bradbury, 9 Tex., 489; Warner v. Bailey, 7 Tex., 519; Crosby v. Huston, 1 Tex., 225; March v. Walker, 48 Tex., 373; Morris v. Gordon, 36 Tex., 72; Ellis v. McKinley, 33 Tex., 678; Adams v. George, 25 Tex. Supp., 377; Sweeney v. Jarvis, 6 Tex., 44; Hillebrant v. Brewer, 6 Tex., 52; Bell v. Walnitzch, 39 Tex., 134; Houston and Texas Central Railroad Co. v. Bradley, 45 Tex., 175.)

II. The court below refused to allow defendant to require answer of the witness Howe to the question as to Morris' statements, in the presence of Le Gierse, soon after the accident. This was correct. (Stark. on Ev., 9th ed., 82; Greenl. Ev., (Redf. ed.,) 115–226.)

III. The charge of the court upon the effect of the train not being halted for five minutes. (Paschal's Dig., art. 6532; State Const., Gen. Prov., sec. 26; Texas and Pacific Railroad Co. v. Murphy, 46 Tex., 360; Mercer v. Hall, 2 Tex., 285; Shear. & Red. on Neg., 3d ed., 16.)

IV. As to charge on damages. (State Const., Gen. Prov., sec. 26; Houston and Texas Central Railroad Co. v. Bradley, 45 Tex., 175; Houston and Texas Central Railroad Co. v. Moore, 49 Tex., 31; March v. Walker, 48 Tex., 373.)

V. The verdict was supported by the facts. (State Const., Gen. Prov., sec. 26; Houston and Texas Central Railroad Co. v. Bradley, 45 Tex., 175; Houston and Texas Central Railroad Co. v. Moore, 49 Tex., 31; March v. Walker, 48 Tex., 373; Houston and Great Northern Railroad Co. v. Randall, 50 Tex., 254; Tooley v. R. W. P. Ass. Co., 4 Big. L. & A. Rep., 34.)

VI. That the shares of the widow and two children were not fixed and determined in the verdict, and judgment is not error. (State Const., Gen. Prov., sec. 26; March v. Walker, 48 Tex., 373; Potter's Dwarris on Stats. and Consts., 346, 347, 364, 365; Sedg. on Stat. and Const. Law, 3d ed., ch. 10; Cooley's Const. Lim., 3d ed., ch. 4.)

Bonner, Associate Justice.—In the disposition of this case we will consider only such of the alleged errors assigned as in our opinion present the material points raised by the record.

I. The first and seventh errors assigned present the validity of the verdict and judgment in favor of Mrs. Cecile Le Gierse alone, when it is apparent upon the record that there were two minor children of the deceased, Louis Le Gierse, whose rights were not adjudicated.

The case of Baker v. Bolton, 1 Camp., (Eng.,) 493, (1808,) is generally cited in support of the common-law doctrine, "that in a civil court the death of a human being cannot be complained of as an injury." This was probably founded

upon the generally received opinion that the civil remedy was merged into the felony which, at common law, worked a forfeiture of property, and that a personal action dies with the person.   Judge Dillon, in Sullivan *v.* Union Pacific Railroad Co., 1 Cent. Law Jour., 595, holds, however, that such doctrine cannot be vindicated on considerations of "reason, justice, or policy."   To obviate the old rule, the statute of 9 and 10 Victoria, ch. 93, commonly known as "Lord Campbell's act," was passed.   Similar statutes have been enacted in most of the States of the Union, including Texas.   (Act of Feb. 2, 1860, Paschal's Dig., arts. 15–18.)   In addition to the statute, section 30 of article 12 of the Constitution of 1869 gave to specified classes of persons, "separately and consecutively," the right to exemplary damages.   This was substantially reënacted by section 26 of article 16 of the Constitution of 1876, except that the words "separately and consecutively" are omitted.

The right to such an action in our courts being, then, given by express enactments, parties who seek to avail themselves of their benefits must be governed by their provisions.

From the language of the act and the change in the phraseology of the Constitution, it was evidently the intention of the Legislature that but one suit should be allowed, and that this should be prosecuted for the joint benefit of all parties interested; and it is expressly provided that the amount which may be recovered shall be divided among them "in such shares as the jury shall find and direct."   (Paschal's Dig., art. 16; Railway Co. *v.* Moore, 49 Tex., 31.)

In the above case of Railway Co. *v.* Moore, 49 Tex., 46, it is said, that "when it appears from an inspection of the petition that it does not contain the proper averments to enable the court to distribute the damages as contemplated by the statute, it is subject to exception; and when the facts are sufficiently exhibited by the pleading, but the judgment fails to divide the damages assessed by the jury among the parties as directed by the statute, it is error."

The necessity of such proper distribution is shown by the reasoning in March *v.* Walker, 48 Tex., 376, where it is said: "The statute directs that the jury shall make such division. Evidently the actual and prospective damage to children of different age or sex may vary greatly. The loss of a father would affect more injuriously an infant daughter than it would a son approaching manhood and able to care for himself. The jury might very properly direct that the greater part of the amount recovered be given to the one most needy and most injured."

It would seem that no other tribunal, more appropriately than the jury who tried the case and who know the grounds upon which the damage was given, could apportion this damage.

If all the parties in interest are not before the court as actual plaintiffs, the suit should proceed in the name of one or more for the use and benefit of the others. If the pleadings of the plaintiff do not disclose the names of all, the defect can be reached by plea in abatement. If the non-joinder is apparent of record, then it could be made available by demurrer.

In the case before the court, the petition disclosed that the two minor children were necessary beneficiaries in the judgment which might be rendered. It cannot be claimed that the plaintiff, who first sued as surviving wife of the deceased, represented, in that capacity, the interest of the minors, as she subsequently abandoned those allegations in the petition.

The suit was prosecuted in the individual name of the plaintiff; it was expressly alleged that the damage accrued to her; and the judgment was rendered in her name only, and does not purport also to have been for the use and benefit of the minors.

If it be admitted that the non-joinder could not be taken advantage of by general demurrer, which it is not necessary to decide, the existence and interests of the minors were

apparent upon the record, and it was error to proceed to trial and judgment without regard to their rights. If, as held by this court, the mother, as natural guardian, cannot legally compromise the interest of her minor children in such cases, where the damages were received by her for their joint benefit, much less could she bind them by a suit in which, as in this case, they are not represented, or their interest regarded and protected in the judgment. (Railroad Co. *v.* Bradley, 45 Tex., 171.)

II. The third and so much of the fifth error assigned as pertains to the refusal of the court to give the ninth special charge asked by the defendant, present the constitutionality of the act requiring conductors of passenger trains to stop not less than five minutes at each station, (Paschal's Dig., art. 6532,) and of the applicability of the statute to the facts of this case.

It does not become necessary for us to decide upon the constitutionality of the act. Under the rule of construction applicable to such questions, and in view of the recent decision of the Court of Appeals sustaining the constitutionality of the statute, (Davidson *v.* The State, 4 Court of Appeals, 545,) we would not declare the law unconstitutional, unless it should plainly appear that the vested charter or other important rights of the railroad company were unduly prejudiced thereby; and particularly as under pending legislation the question may cease to be a practical one.

We think, however, that, under the evidence, the question is not so much whether the train did or did not stop the required five minutes at Borden station, as it is one of contributory negligence upon the part of the deceased, Louis Le Gierse.

If it be admitted that the defendant company may have been guilty of negligence in not waiting the five minutes, and that in a proper case it might be liable for damages other than that proximately occasioned by the delay consequent thereon, still this would not have justified the deceased

in attempting to get aboard the train when in motion, if, under the circumstances, this also may have been an act of negligence on his part which may have materially contributed to his injury. These, then, became, under the circumstances, material questions of fact, which, under appropriate instructions, should have been properly submitted to the jury. (Railroad Co. *v.* Murphy, 46 Tex., 356; Brandon *v.* Manufacturing Co., *ante*, 121.)

The third subdivision of the charge reads as follows: " 3. If the jury believe from the evidence that the said conductor of said train had, on the night Le Gierse attempted to board said train, caused said train to stop at Borden station five minutes before he set the same in a forward motion, and that after the usual signals had been given said train was set in a forward motion, and Le Gierse then attempted and failed to board the said train, then and in that case you should find for the defendant." It is but reasonable to presume that the jury, from this, may have inferred that if the train did not stop the five minutes, the defendant company, under the law, was liable, irrespective of the question of contributory negligence on the part of the deceased.

A careful analytical consideration of the charge as a whole, and particularly in connection with the seventh and eighth special charges asked by the defendant and given by the court, would perhaps show that the proposition contained in this third subdivision of the general charge was so qualified as to present the question of contributory negligence. In suits, however, of this character, where if exemplary damages are given they are in the nature of penalties, the charge of the court should not be entitled to the same liberality of construction as in ordinary civil cases; and particularly where the general charge — by which the jury is the more readily influenced — contains, without qualification, in a distinct and independent division, a proposition on a material point calculated to mislead them. We think, under the circum-

stances, it is but reasonable to infer that the jury may have been thus misled in the present case.

III. So much of the charge of the court which is complained of in the second ground of the motion for new trial and in the refusal of the last special charge—not numbered—asked by the defendant, raises the question of the duty of the court to have instructed the jury as to the proper measure of damages in the event that they found for the plaintiff.

The constitutional provision (that now in force being section 26 of article 16 of the Constitution of 1876) giving exemplary damages in such cases, did not repeal the previous act of the Legislature, (Paschal's Dig., arts. 15–18,) but was simply cumulative. The act was intended, according to the well-settled construction of similar statutes, to give compensatory damages only; but the Constitution went a step beyond and gave also exemplary damages. (Price *v.* Navigation Co., 46 Tex., 535; March *v.* Walker, 48 Tex., 372.)

A party, then, according to the allegations and evidence, if he should be entitled to judgment, may recover actual damages only, or both actual and exemplary.

We think the true practice which should govern in all this class of cases, and which should be enforced by the presiding judges below, is that indicated by this court in Wallace *v.* Finberg, 46 Tex., 35, that when both actual and exemplary damages are sought, they should be claimed by proper allegations, in the nature of two distinct counts on different causes of action, or cross-action, with averments respectively appropriate to each remedy, these being essentially different in the facts necessary to be alleged and proven.

And we further think it the proper practice that the court should, in the charge, give to the jury the rules of law, as applied to the facts in evidence, which should govern them in the measure of this damage; and that where the testimony warrants a charge upon both actual and exemplary damages, the jury should be required to respond in separate verdicts, showing, if any, the amount of actual and that of exemplary

damages they may find. ' If this is not done, the courts cannot, upon a motion for a new trial, advisedly review the action of the jury and determine whether the verdict is supported by the law and the evidence.

In the present case, the charge of the court did not instruct the jury as to the distinction between actual and exemplary damages, or furnish them any rules of law by which they should measure this damage; but the whole question was, in general terms, submitted to their uninstructed and unlimited discretion, and a verdict rendered for the gross sum of $19,000.

The rules by which damages should be measured are questions of law, to be given in the charge by the court to the jury; the amount of damage to which a party may be entitled, is a question of fact to be determined by the jury, by the application of these rules of law to the evidence in the particular case.

Our statute requires that the court should decide on the questions of law and instruct the jury in regard thereto,— " distinctly separating questions of law from questions of fact." (Paschal's Dig., art. 1464.)

In the failure of the court to thus instruct the jury in this case, there was error.

IV. We do not think that, under the circumstances, there was error in excluding the declaration of the witness Morris, as shown in the second alleged error assigned.

The declaration excluded was not competent to impeach the witness, as the proper basis had not been laid. (Weir *v.* McGee, 25 Tex. Supp., 20.) It was not, under the circumstances surrounding the deceased, proper as an implied admission, and was not shown by the evidence before us to have been so intimately connected with the transaction as to have been a part of the *res gestæ*, if otherwise admissible for this purpose.

For the errors, however, before shown, the judgment below must be reversed and the cause remanded.

Reversed and remanded.