## I. & G. N. R. R. Co. v. DAVID JORDAN.

(No. 1450, Op. Book No. 3, p. ——.)

ERROR from Houston County. Opinion by WILLSON, J.

§ **859.** *Road; meaning of, as used in art. 4232, Rev. Stats.; construction of statute.* Jordan was traveling a neighborhood road which crossed the company's railroad track. He was in a wagon drawn by one yoke of oxen. The bed of the wagon was high, and he was sitting down in it. Just as he reached the track he saw a train approaching, and whipped up his oxen to get across the track, but the engine, as he was crossing the track, struck the hind part of his wagon and broke it down, also throwing him out of his wagon; but it is not shown by the evidence that his fall caused him any injury, except that he was "dazed" for a few moments. He

testified himself on the trial that he did not know of the approach of the train; did not look for it; did not listen for it; was not thinking about it, and could not have seen its approach from his position until he reached the track. There was a conflict of testimony as to whether or not the signal bell on the train was rung when approaching the road crossing. The road was a neighborhood road leading to a mill and gin, and was frequently traveled, but was not a public road, established as such under the law. The company had provided and maintained a crossing for the road over their track, and usually gave the required signals upon approaching it. There was no proof of the damage sustained by Jordan except his own testimony, which was that his wagon was worth $60, and that he considered he had sustained personal damage to the amount of $140. He recovered a judgment for $60 and costs. Upon the foregoing state of facts, the court charged the jury substantially that article 4232 of the Revised Statutes applied to this neighborhood road. This article provides that: "A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and the bell shall be rung or the whistle blown at the distance of at least eighty rods from the place where the railroad shall cross any road or street, and to be kept ringing, or blowing, until it shall have crossed such road or street, or stopped, under a penalty of $50 for every neglect, to be paid by the corporation owning the railroad, and also be liable for all damage which shall be sustained by any person by reason of such neglect." It is contended by plaintiff in error that the above quoted article applies only to such roads as are established as public roads under the law, and that the road in question not being such a road, it was not obligatory upon the company to give the required signal upon approaching it with a train. A charge embodying this view of the law was requested and refused. A question is here presented of much importance, and, to our minds, of considerable difficulty, and we are not aware

that it has ever been authoritatively determined in this state. We have found no decision of supreme court, and there has been none of this court, which bears upon it. Neither have we been cited by counsel to any authority but the statute itself.

Article 4231 of the Revised Statutes requires railroad companies to erect at all points where their roads shall cross any first or second class public road, etc., a sign with large and distinct letters placed thereon, to give notice, etc. This article is limited expressly to *public* roads of the first and second class, as defined by the statute governing public roads, and there is no difficulty in its construction. But these two articles are independent of each other, and relate to different requirements entirely; and it does not follow that because article 4231 uses the words "public roads," the words "any road," used in the succeeding article, must be construed to signify "any *public* road." It is to be taken for granted that the legislature used such language in these provisions as would best express the legislative intent. In the one article the operation of it is restricted to *public* roads. In the other there is no such restriction. If such restriction had been intended, would it not have been directly expressed in the latter article, as it was in the former? "Any road" does not mean any *public* road, but it means more, for there are roads which are not in law deemed public. "Road" is synonymous with "way," "highway," "street," "lane," "pathway," "route," "passage," "course." [Webster's Dic., word "road."] Strictly, however, it is a way for horses and carriages. [Id., word "way."] In this latter confined sense, it is generally used and understood in this country, and must, we think, be so taken in construing its meaning in the article quoted. [R. S. 3138, subd. 1.] Our construction of article 4232 is that it applies to all roads that are traveled on horseback and in vehicles, and which were so used at the time of the construction of the railroad. We do not think that a road opened across a railroad track

after the construction of the railroad, and without being established as a public road under the law, would impose upon the railroad company the performance of the requirements of this statute. The court below did not err in its charge upon this subject, nor in refusing the charges asked by appellant. [NOTE.— Since this decision was rendered, article 4232 of the Revised Statutes has been materially amended, and among other changes made in it, it is now restricted in its operation to *public* roads.] [See Gen. Laws 18th Leg. chap. 39, p. 28.]

§ 860. *Contributory negligence; rule concerning.* But we are of opinion that the court materially erred in another portion of its charge. We refer to the following: "If you believe from the evidence that the warning signals were given from the train on its approaching the crossing, and if you further believe from the evidence that the plaintiff recklessly and carelessly drove on the track without looking or listening to learn whether or not any train was approaching said crossing, and that the engineer could not by the use of proper care and caution have discovered the plaintiff on the track in time to have stopped the train, then the defendant would not be liable to the plaintiff for any damage he may have sustained." This charge, in effect, instructs the jury that no negligence on the part of Jordan in driving upon the track would excuse the company from damages for injuries occasioned thereby, unless the warning signals required by law had been given. We do not understand this to be the law. In the case of H. & T. C. R. R. Co. v. Nixon, 52 Tex. 19, in treating of this statute, it is said: "The true construction of the statute is that it superadds a duty upon the company, the disregard of which would impose no greater or other liability than would follow from a common law duty in respect to care in running a train, and the mere omission to ring the bell would not of itself render the company liable." While the company may have been guilty of negligence in failing to give the signals, such negligence would not

justify Jordan in carelessly driving upon the track, if such act on his part was negligence, and contributed to the injuries sustained by him. [R. R. Co. v. Le Gierse, 51 Tex. 189.] It is true that railroad companies are bound to exercise their dangerous business with due care to avoid injuries to others, even as to trespassers. But if the person injured has by his own negligence contributed to the injury, he cannot recover damages. [R. R. Co. v. Sympkins, 54 Tex. 615; R. R. Co. v. Smith, 52 Tex. 178.] In treating upon the subject under discussion, Mr. Pierce, in his work on Railroads, says: "The obligations of the company and of the traveler are mutual and reciprocal, and the same degree of care to avoid a collision is incumbent on each. It is its duty to give the warnings required by statute, or in the exercise of reasonable care, and it is his duty to have his attention alive to them and to heed them. The company having a fixed place of movement and a peculiar momentum, has the right of precedence in crossing highways, and he must wait till the train, the coming of which he knows or ought to know, has passed. A traveler upon a highway, when approaching a railroad crossing, ought to make a vigilant use of his senses of sight and hearing, in order to avoid a collision. This precaution is dictated by common prudence. He should listen for signals and look in the different directions from which a train may come. If by neglect of this duty he suffers injury from a passing train, he cannot recover of the company, although it may itself be chargeable with negligence, or may have failed to give the signals required by the statute, or may be running at the time at a speed exceeding the legal rate." [Pierce on Railroads, 342, 343.]

§ 861. *Damages; evidence as to, held to be too general.* As this case will be remanded for a new trial, we think it proper to suggest that the proof of damage as presented in the statement of facts is too indefinite, general and unsatisfactory, in our opinion, to sustain a judgment. It is not shown to what extent the wagon

was injured. It was proven to be worth $60, but it was not totally destroyed, and the evidence fails to show how much its value was deteriorated by the injury. There is no evidence as to any other injury sustained, except that Jordan says· he considered his personal injuries amounted to $140; but he does not state in what these injuries consisted. If there had been no error in the charge of the court, we would reverse the judgment upon this character of evidence as being insufficient to sustain the verdict.

§ 862. *Estoppel.* In this case the evidence shows that the company recognized the road as a road, by placing and maintaining a crossing for it, and by giving the usual signals upon approaching it with trains, and this estops the company from denying that it is such a road as the law contemplated.

February 24, 1883. Affirmed.