# DECISIONS

—— OF THE ——

# SUPREME COURT OF FLORIDA.

## JUNE TERM, A. D. 1892.

FLORIDA SOUTHERN RAILWAY CO., APPELLANT, VS. WALTER J. HIRST, APPELLEE.

1. A negligent act done prior to the statute of June 7th, 1887, section 2345 R. S., and resulting in injury to another, will not sustain an action for damages if negligence upon the part of the person injured was contributory to his incurring such injury. L. & N. R. R. Co. vs. Yniestra, 21 Fla., 700, affirmed.

2. The law requires of railroad companies the exercise of the highest degree of care for the safety of passengers traveling upon their trains; and it authorizes such companies to make, and requires passengers to observe all rules reasonably necessary for the safety of the latter. A rule of a railroad company requiring that passengers shall remain in the cars provided for them, and, consequently, that they shall not ride in an express car, or other place of increased danger set apart for another purpose, is reasonable.

3. It is contributory negligence for a passenger to ride in an express car in violation of a known rule of the company, even with the permission, connivance or knowledge of the conductor of the train, or without his protestation against it, when the conductor is cognizant of the rule and of its infraction, if by such violation of the rule the passenger brings upon himself injury from which he would have escaped, notwithstanding that the negligence of the company produced the accident, had he remained in the passenger car set apart, and affording space, for his accommodation.

4. It is the duty of the conductor of a railroad train to enforce a rule of the company requiring passengers to ride in the passenger cars, but the obligation upon passengers and the protection to the company, of a rule of this kind, is not dependent upon the fidelity of the conductor or other agent charged with its enforcement.

5. Where a passenger who knows of a rule requiring him to ride in the passenger cars, rides in an express car or other place on the train which cannot be regarded as intended for accommodation of passengers, but naturally suggests that it was not intended for them, the burden is upon him to prove that he was justified in riding in such prohibited place.

6. If a railway company which has a rule prohibiting passengers from riding in the express car, or in other cars than the passenger cars, habitually permits passengers to ride in the express car, it will incur the same responsibility to passengers for injuries received by them, through the company's negligence, when riding in the express car as if they were in a passenger car.

7. Though a passenger, who riding in an express car, receives an injury, knows at the time that there is a reasonable rule of the company prohibiting his riding there, cannot invoke the mere delinquency of the conductor in enforcing the rule as a bar to the company's claiming the protection of the rule, still a company may by its conduct abandon the rule, or preclude itself from protection thereunder.   It may, by its conduct, have held out its employes in control of its trains, as authorized, notwith-

Florida Southern Railway Co. v. Walter J. Hirst—Syllabus.

standing such a rule, to consent to plaintiff's riding in an express car ; or its employes may have been accustomed to allow passengers to ride in the express car so generally and constantly that the officers of the company must be held to have known of and acquiesced in the violation of the rule ; or there may have been such continued and habitual disregard of the rule by the employes as must have reasonably produced the belief that the company had practically abandoned its rule.    There must be such conduct as in effect establishes the concurrence of the company in the disregard of the regulation.

8. It is error to submit a case to a jury upon the theory that the virtue or efficiency of a rule prohibiting passengers from riding in express cars is entirely dependent upon the fidelity of the conductor or other agent charged with its enforcement.

9. Where a party has inflicted an injury intentionally, or where it has been done through negligence and hence unintentionally, and his conduct in doing it has been wanton or reckless of its injurious consequences, the contributory negligence of the person injured is not a defense to an action brought by him for such injury.

10. The use of the expression "gross negligence" in a charge to a jury does not of itself define, nor does it include only, that extreme degree of negligence which is wanton or reckless of its injurious consequences, and to which the defense of contributory negligence does not obtain ; and can not be held as having b. en intended to submit the case to a jury for consideration as one of that character, and particulary so where other charges have recognized contributory negligence as a defense to the action.

11. Exemplary damages can be allowed in cases of negligence, only where the negligence is of a gross and flagrant character evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects ; or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness, or recklessness, or a grossly careless disregard of the safety and

4 SUPREME COURT.

Florida Southern Ry. Co. v. Walter J. Hirst—Argument of Counsel.

welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them. As " gross negligence " is not confined to this extreme degree of negligence, it is not proper to charge a jury simply that gross negligence will justify the imposition of such damages.

12. The actual payment of fare is not essential to the status of a passenger on a railroad train.

13. A person who was injured while in an express car of a passenger train had, up to six weeks prior to the accident out of which the action arose, been an express messenger, and had run on the same train with the conductor of the colliding passenger train, but had left such employment and at the accident was engaged in other business not connected with the railroad. On boarding the train he went into the passenger car. He had funds sufficient to pay his fare, but the conductor, who, there was evidence to show, was aware of these facts, omitted, without fault of the party, to ask him for his fare, and gave as a reason for this omission that he thought the party was in the employ of the express company ; *Held*, That the evidence did not justify a conclusion either that the party was attempting to obtain a ride without paying fare, and to this end was practicing a fraud or imposition on the conductor or the company by passing himself off as an express messenger returning to his " run," or that he had at *no time* the legal status of a passenger thereon.

Appeal from the Circuit Court for Alachua county.

The facts in the case are stated in the opinion of the court.

*J. R. Parrot* and *Robert W. Davis* for Appellant.

*E. C. F. Sanchez* for Appellee.

Exception to charges. The first taken by defendant to the general charge of the court. We think

that the court committed no error therein. The facts of the case sworn to by Gamble show clearly and conclusively that the defendants were not only guilty of gross carelessness in the running of their two trains on the same track, going in different directions in violation of all rules of safety, but they were in fact criminally negligent, having telegraph communication with their trains from station to station there was no necessity for the accident whatever. We think that the facts establish gross negligence and that the question was purely a question of law. There could have been no injury done to defendant before the jury by the charge, the qualification by the court that plaintiff would be entitled to recover unless he contributed to the injury, certainly put defendant in as favorable a light before the jury as plaintiff. Pierce on Railroads, page 314.

In Chicago and Alton Railway vs. Poudrow, the court say it was gross negligence for a railway company to fail to keep its track clear. 51 Ill., p. 333 ; 14 Howard, p. 468 ; Philadelphia and Reading R. R. vs. Derby.

This is almost a parallel case so far as the fact of collision and negligence and riding without paying fare are concerned and the words of the charge in this case, to-wit : "Gross negligence are therein used in courts charge to the jury." The court's attention is especially invited to this case. See Hutchinson on Carriers, pp. 617 and 618, sec. 800.

It is laid down that the law presumes from the very

nature of the collision between two trains, negligence in company or its servants. It can not be doubted that there are cases in which certain facts being shown the carrier will be presumed to be negligent as a matter of law, this case is certainly one of them. See Vol. 2, Beach's Law of Railways, sec. 976; 32 Minn., 1; 50 American Reports, p. 550.

See also Philadelphia and C. R. R. vs. Derby, 14 Howard, 468. And is supported in our opinion by the evidentiary fact of collision and failure to notify passenger train conductor of the extra running on his time.

### CONDUCTOR'S KNOWLEDGE OR CONSENT.

We cite the following authorities to show that as in this case whereby testimony of plaintiff and defendants, to-wit: Conductor Gamble's passengers were habitually allowed by company to occupy express car to sit and smoke in, that a passenger injured while in there, with conductor's knowledge and consent, his presence therein would not be such negligence as would exonerate the company of its negligence or want of care. 10th So., paragraph 2, p. 140. See Hutchinson on Carriers, sec. 654; Carrol vs. R. R., 1 Duer, 571; Jacobin vs. R. R., 20 Minn., 125; Washburn vs. R. R., 3 Head, 638; Phila., &c., R. R. vs. Derby, 14 Howard, 463. See also Field on Damages, p. 165, sec. 174 and note 17 thereto on page 166 ; in R. R. Company vs. Jones, 95 U. S., 439, cited by appellants.

Plaintiff was notified not to ride on engine, but in

the car, and was forbidden to ride on pilot, both by conductor and engineer, and at time of accident was on pilot without the knowledge of any agent of defendant. We take it that a comparison of this case with that of Phila. R. R. vs. Derby shows clearly that there is no conflict between them as to the principle laid down in the latter case. The cases are dissimilar in every aspect, and the former case has no controlling feature similar to case at bar.

In the case of Jones, the court say he was the author of his own misfortune, because he had been repeatedly warned by the conductor and engineer not to ride on the pilot, the place where he received his injuries.

### FREE PASSENGERS.

From reception by servants of corporations as a passenger arises an obligation on carriers part to carry him safely. Vol. 2, Beach's Law of R. R., p. 973; 107 Mass., p. 108. Thompson on Carriers of Passengers, 31, pp. 175, 438; 14 Howard, p. 468 and 483; also Beach on Contributory Negligence, 176, 178, 308 and 309 ; 3 Allen, Mass., p. 318; Redfield on Railways, p. 329; 16 Howard, U. S., p. 469; Ind. Central Co. vs. Mundy, 21 Ind., p. 48.

Contributory Negligence must be especially plead and proven, plaintiff need not allege or produce evidence to show that he did not contribute to the injury, 2 Vol., Beach on Railway, p. 977.

Pleading it does not throw burden of disproving it on plaintiff. *Ibid.*

DOCTRINE OF CONTRIBUTORY NEGLIGENCE.

That plaintiff can derive no benefit from his own wrong.

APPLICATION IN CASES OF NEGLIGENCE.

In Field on Damages, sec. 168, the doctrine is elaborately discussed. He says that defendant is in all cases liable for the loss of which his negligence is the primary and proximate cause, and although there may have been negligence on part of plaintiff, yet unless he might by the exercise of ordinary care have avoided the consequence of defendants, he is entitled to recover the loss sustained thereby.

And in connection therewith quotes in note 8 to sec. 168 on page 159, "that if defendant is guilty of gross negligence, he can not set up a trifling negligence or inadvertence of plaintiff as a defense," citing Wharton on Negligence, sec. 300-1, and cases cited. See also collation of authorities cited in note 38, pages 173-4-5, Field on Damages; also L. & N. Co. vs. Sickings, 5 Bush., p. 1.; L. & N. Co. v. Collins, 2 Duval, 114; Wichita R. R. vs. Davis, 37 Kansas, 743; Northern Central Railway vs. State, etc., 29 Mo., 420; Davies vs. Mann, 10 M. & W., 549; Lucas vs. R. R. Co., 6 Gray, p. 72. See especially Amer. Law Review, July and August, 1891, Vol. 25, No. 4, pp. 665-6; Thompson on Carriers of Passengers, 243.

We contend that there can be no doubt but that the

gross negligence of the defendant in the running of the two trains on same track as testified to by its conductor, and the manner they were run and without any notice whatever to either of them, was the proximate cause of plaintiff's injury. And even if plaintiff was not entirely without fault the action may be well sustained, and he was entitled to recover. See sec. 171, p. 163, Field on Damages; also note 12 on same page. See Ind. R. R. vs. McClure, 26 Ind., p. 370; Chicago and Alton R. R. vs. Pondrom sustaining this doctrine, 55 Ill., p. 333; 2d Am. Rep., 309.

We invite attention to its discussion of the doctrine in this case and authority cited therein.

We contend that nothing is contributory negligence that is less in degree than culpable negligence, though there be negligence in fact. See Field on Damages, Doctrine of Ordinary Case, sec. 179.

### DAMAGES.

As to the question of damages and the method of estimating, see Field on Damages, sec. 688, and the other authorities cited in notes 25, 26, 27, 28 and 29, on page 535, *Id.* Also Beach Law of Railway, vol. 2, sec. 1009.

We think under the doctrine therein enunciated and carried out by our own Supreme Court, in the Webster case, the jury were fully warranted in arriving at their verdict, the damages are not excessive, the

age of plaintiff were before them, the salary he was receiving a short time previous, the fact of his being in business at time of accident, and the further fact of his being unable for two or three years thereafter to do any business at all, being obliged on account of his health to leave one or two positions, and the fact as proved by the testimony of Drs. Wall and Lancaster, that the injury was of such a nature that it was liable at any moment to effect his brain, and would keep him from engaging in brain work.

Plaintiff was at time of accident, an ordinary day laborer; he was a person of intelligence, in fact was educated for a book-keeper.    Pierce on R. R., p. 301; Vol. 2, Beach's Law of Railway, sec. 1009; and authorities in Thompson on Carriers of Passengers, pages 102, 124, 148, 564; 91 Mo., p. 647; Redhead vs. Midland R. R. Co., L. R., 4 Queen, B, 379; Reichman vs. 2d Avenue R. R. Co., 48 Hun., 620; Curtis vs. Rochester R. R., 18 N. Y., p. 534.

As to new trial on ground of newly discovered evidence, it is apparent from the reading of the evidence it could have no bearing on the question whether Hirst was injured, none of the facts as to the extent of the injuries; he is no medical expert; none on the facts of gross recklessness of defendant in running their trains on that day, and what then could it effect only the question of contributory negligence (by being in express car which is admitted by Hirst), then

in what way could it effect result of suit—we answer none—for a party guilty of such gross negligence as defendants could not under all the facts in this case invoke the doctrine of contributory negligence as an exonerator. L. & N. R. R. vs. Collins, 2 Duvall, 487.

That the injury occurred on Nov. 23rd, 1885, the case stood for trial for a number of terms, and was finally tried at the Spring term, 1889. It is further apparent that the newly discovered witness, Crom, was in the employ of the express company on the day of the accident, attending to his duties as an express agent for Southern Express Company; that he met Hirst in express car and talked with him at Evinston, one and a half miles from accident. See page 14, Appellants' brief, and see affidavit of Crom, page——of the record, where he swears he was on day he made the affidavit in employ of express company; that appellant displayed no diligence in discovering this evidence. It is certain that J. W. Parrott will not swear that he was connected with case from its incipiency as counsel, he knew comparatively nothing of it, except as it developed itself on trial, but we contend there is no conflict with Hirst's statement, certainly none that would have altered minds of jury.

Crom was at time of accident and trial, connected with express service on appellants' road, (and to go outside of record as they have done in saying "we will not deny that he is a gentleman of integrity,

.etc,'') he was also defendants' passenger agent in Gainesville for several years after accident, and was at time of trial, or within short time thereof. If appellants had exercised any diligence whatever, they could hardly have failed to discover the fact that Crom was there in his capacity as express agent when train left Evinston. We say this because all railroads, when a collision occurs, certainly do investigate it and ascertain the cause because they knew the results, and they would not want to keep in their employ servant or officials as reckless as the evidence in this case disclosed they had on that day.

If any investigation was ever held, it certainly must have been discovered that Crom was there as express agent, for it was not a common occurrence on that road or any other, to run two trains on same track with orders to pass each other as these attempted to do, unless to quote from appellants' brief, "the officials when they heard of the collision, smiled a kind of sickly smile and curled upon the floor, and the subsequent proceedings (of death, or mental and bodily suffering,) interested them no more."

AS TO OBJECTION TO SECOND CHARGE OF COURT.

That the positive affirmative swearing of a credible witness is entitled to more weight in your consideration, (i. e., the jury's) than the negative swearing of many witnesses equally credible. We think the court was correct therein and the appellants certainly

Florida Southern Ry. Co. v. Walter J. Hirst.—Opinion of Court.

do not seriously challenge the correctness thereof, for nowhere in their defense do they positively deny any of the facts as stated on stand by plaintiff's witnesses.

In conclusion we submit that the appellants have not made out such a case either on the facts, or law, as would warrant a reversal of the judgment of the court below, such gross negligence as the evidence in this record discloses, ought not to warrant any court not to sustain them by its decision, in the doctrine they invoke for a reversal of contributory negligence on part of plaintiff.

And courts should frown down such a doctrine when it is evoked to protect such criminal negligence and gross recklessness as this record discloses. We contend that there is not on record an adjudication of any court that sustains the evidence in this case, being considered the positions taken by appellants.

(Judge Young, of the Fourth Circuit, sat in the place of Mr. Justice Taylor, who was disqualified).

RANEY, C. J.:

This is an action to recover damages received by Walter J. Hirst in a collision between two trains on appellant's railroad, Hirst being on a passenger train, which was on its schedule time, and the other train being a special, or extra, train loaded with iron rails.

The rule as to negligence announced by this court in Louisville & Nashville Railroad Co. vs. Yniestra, 21

Fla., 700, is that notwithstanding a person may be guilty of a negligent act from which injury results to another, still if the party injured has by his own negligence contributed to his receiving the injury, he can not recover damages from the other party for such injury. The injury must have been caused solely by the negligence of the former party to entitle the latter to recover. This decision, which we see no reason to disturb, necessarily, even though impliedly, repudiates the doctrine of comparative negligence, which has found favor in the Illinois and other courts ; and it dispenses with the necessity of our noticing the citations from those States made by appellee's counsel. The injury in question was received prior to the passage of the act of June 7th, 1887, Chapter 3744, Laws of Florida, and hence the provision of the first section of this statute as to diminishing damages in proportion to the amount of the default of the plaintiff, where both parties are at fault, has no application.

There is in the cause before us testimony to the effect that Hirst on boarding the train got on the passenger car; and that a rule of the Florida Southern Railway Company, appellant, forbade passengers from riding in any other than passenger cars, or, consequently, in the express car, in which car Hirst had gone and was at the time of the accident, he being about six feet from the fore end of it, and sitting on the iron express box ; and that the plaintiff knew of such rule ; and also to the effect that this car was next to the engine, and was a more dangerous place than the passenger cars, and was neither set apart as, nor was it in fact, the place

where, passengers usually rode, and was not arranged for them, nor had any seats, but was for the use of the express company. Also that the plaintiff had ridden in the express car previously to the trip on the day of the accident in question, and that the conductor had been in there with him a short time, and that plaintiff had gone in there with the conductor and by his permission, or with his, at least, tacit consent; and tending to show that the conductor also knew that the plaintiff was in this car at the time of the collision between the passenger train and the special train loaded with iron rails. It was also testified that there was ample room in the passenger car, and that the plaintiff would not have been injured if he had been in the passenger car, and that he and the express agent were the only ones injured. There was no testimony tending to show that the conductor attempted to enforce the rule, or even suggested to the plaintiff the advisability of its observance, although the conductor says that plaintiff was not in the car by his permission. Hirst had not paid any fare, nor had the conductor applied to him for it.

Exceptions taken by the defendant to charges given to the jury, and to the refusal of one asked by the defendant, involve an inquiry into the legal effect of a railroad company forbidding passengers to ride in parts of the train set apart for other purposes, and naturally more dangerous than passenger cars, and of the power of conductors to waive such rules.

In Railway Co. vs. Moore, 49 Texas, 31, the deceased,

16 SUPREME COURT.

Florida Southern Ry. Co. v. Walter J. Hirst.—Opinion of Court.

when he received the injuries from which he died, was riding on a freight train with the knowledge and consent of the conductor, but whether he had paid fare, or had a pass or permit, was not shown. He was the only person, except the employes of the company, on train, and prior to a month or six weeks before his death, had run on the company's road for a year or two as an engine driver, and knew that passengers were not allowed to travel on the company's freight trains, and that officers in charge of such trains were forbidden to allow parties to ride on them without a special pass from the general superintendent of the road, which passes were not given, in view of the increased risk, without a release of the company from liability in cases of accidents to passengers. The decision of the court was that a regulation that freight and passengers shall be carried on separate trains, is reasonable, and highly salutary to both the company and the public; and no one has the right to demand that he shall be allowed to ride on trains devoted exclusively to the carriage of freight, when the company makes other and suitable provisions for the transportation of passengers; and that a party who in violation of such regulation, and without the consent of the company, forces himself into one of its freight trains cannot hold the company responsible to him as passenger, or recover of the company for injury thus contributed to by him while thus wrongfully on the train. That while it might be true that when the company should, notwithstanding such a regulation, habitually permit persons to travel on its freight trains it would

be liable to such passenger the same as if he were on a regular passenger car ; still when there is such a regulation, and there are no cars attached to freight trains except those ordinarily accompanying trains exclusively of this character, or only such cars as by their appearance or the manner in which they are fitted up, cannot be regarded as inviting persons on freight trains as passengers, the burden of proving that the party injured on such a train was justified in going on it as a passenger is upon him ; and the conclusion of the court was that the evidence showed that the conductor did not have authority to waive the regulation, and that the deceased must have known this.

In Prince vs. I. & G. N. R. Co., 64 Texas, 144, the injuries of the plaintiff were alleged to have been received through the negligence of defendant's employes while he was riding on a hand car on which he was invited to ride, and on which he was received as a passenger, and that the company sometimes used such car for the transportation of passengers invited to travel on it by the proper agents of the company free of charge ; and the questions arose on a demurrer to the petition. The order overruling the demurrer was affirmed, and it was held, that a railway company is liable in damages to one who is injured by the negligence of its agents while traveling on a hand car of the company, on which he had been invited to ride by the agent of the company in charge of the car free of charge, it appearing that such a car was sometimes used by the company for the transportation of passen-

2

gers, and not shown that any regulation of the company prohibited traveling on such a car. In the opinion, the effect of the decision in Railway Co. vs. Moore, *supra*, is stated to be : That the question whether or not a passenger is lawfully on a train does not depend necessarily upon the purposes to which the train is usually devoted ; if, however, the train is usually employed in the transportation of passengers, a person who has paid his fare, or has been invited to ride free of charge, is presumed to be lawfully on the train. That if by the rules of the company passengers are expressly forbidden to be carried upon particular trains, the presumption is that any one claiming to be a passenger upon such a train is an intruder, and without lawful right to be there ; but this presumption may be rebutted by showing that, though the rules forbid the transportation of passengers on such trains, yet, with the knowledge of the company, and without objection on its part, persons are habitually permitted to take passage on them. That the company, through its proper officers, having the right to make these rules, may, through the same officers, relax or dispense with them, and the public are authorized to consider them dispensed with when not practically enforced. The conductor cannot relax these regulations without the consent of the company, because he is the agent whose special duty it is to see that they are enforced, and any relaxation of the rule on his part would be a disobedience of the orders of his superiors. The case of Gulf, Colorado & S. F. Ry. Co. vs. Campbell, 76 Texas, 74, was one in which the plaintiff sued for

personal injuries suffered when upon a freight train, and there was evidence that he was refused passage by the conductor who told him he had no authority to carry passengers and could not; but that subsequently plaintiff was given permission to board the train by a man who stood on the platform and had a lantern in his hand, and in reply to the question, if he had charge of the train, answered affirmatively. It was held that plaintiff's presence on the train was not with the company's consent, and that he contributed to his injury, and among the charges held to have been improperly refused was one embodying what is set out above in the last three sentences relating to the Prince case.

In Robertson v. N. Y. & E. R. Co., 22 Barbour, 91, a railroad company by its printed rules and regulations prohibited its engineers from allowing any one, not in its employ, to ride on the engines. The plaintiff applied to the engineer to ride upon his engine, and was informed that it was against the rules of the company to permit it, but finally consented, and plaintiff rode there, without the knowledge of the conductor, and without paying fare; and it was held that the consent of the engineer conferred no legal right, and that the plaintiff, as he was not lawfully on the engine, was a wrong-doer, and that he could not recover damages for injuries incurred, through the negligence or want of skill of the defendant, while he was riding there; and, further, that the *onus* was

upon the plaintiff to show that the engineer had authority to permit him to ride on the engine, the presumption being that he had no right to be there, whether he paid fare or not. In the opinion it is said: "The plaintiff, without information on the subject from any of the defendant's agents or servants, had no right to presume that the engineer had authority from the defendants to permit him to ride upon the engine, especially as he paid no fare. The presumption was against his right to be upon the engine, whether he paid fare or rode free. The engine is not the place where even that class of passengers who pay no fare usually ride." Eaton vs. Delaware, L. & W. R. R. Co., 57 N. Y., 382, is a case in which it is held that where a railroad company makes, as it has the right to do, a complete separation of freight and passenger business, a freight conductor has such general authority only as is incidental to the business of moving freight, and no power as to the transportation of passengers; and notice of this limited authority will be implied from the nature and apparent division of the business. It was further decided that the presumption is, that a stranger riding on a freight train is not legally a passenger, and is not lawfully upon the train, and no liability for negligence can be imposed upon the company as to him, unless the special circumstances of the case rebut this presumption. The plaintiff was invited by the conductor of a coal train on defendant's road, to ride in the "caboose,"

with a promise to get him employment as a brakeman. No passenger car was attached to it, but, in addition to the coal cars, only the "caboose," for carriage of train implements and the accommodation of the train employes. Through the negligence of the defendant's employes the train was run into by another, and plaintiff, while riding in the caboose, was injured. By a regulation of the defendant, printed for the use of the employes, passengers were forbidden to ride on coal trains, but of this plaintiff had no actual notice. It did not appear that passengers were permitted to ride, even occasionally, in the caboose. The trial court instructed the jury that if the plaintiff was upon the train with the assent of the conductor, and without being informed of the regulation, the defendant was liable; but the conclusion of the Court of Appeals was that this was error; that there was nothing in the attendant circumstances indicating any apparent authority in the conductor to create between the parties the relation of passenger and carrier, or to make an arrangement for plaintiff's employment as a brakeman, and that the facts did not establish that the plaintiff was lawfully on the train.

The same rule as to the presumption that persons riding upon trains which are palpably not designed for the carriage of passengers is announced in Waterbury vs. N. Y. C. & H. R. R. Co., cited below.

Pennsylvania R. Co. v.s Langdon, 92 Penn. St., 21, presents a case in which one Langdon died from in-

juries received in a collision of trains, such collision resulting from a misunderstanding of orders by the conductor of the train on which Langdon was. On boarding the train he went immediately to the baggage car, and was engaged in conversation with the baggage master when the collision occurred, the train having proceeded but a short distance in a brief period of time. He was in the employ of the defendant company as a night inspector of locomotives at the outer Pittsburgh depot of the Pennsylvania Railroad, and was not at work on the branch road, the Western Pennsylvania Railroad, operated by defendant company, on which branch road he was killed. He was riding on a commutation ticket, such as were ordinarily sold to passengers, and is accorded the position of a passenger, in the opinion. He lived on the line of the Western Pennsylvania Railroad, and was in the habit of riding to and from his home daily on that road. When injured, he was in the baggage car contrary to a printed notice posted in it forbidding any passenger from riding therein. It appeared that no harm would have occurred to the deceased, had he gone into any other car on the train. The defense relied on was that he was in the baggage car in violation of the rule of the company, and with positive knowledge, as a railroad employe, that he had gone into a forbidden place, and was there at his own peril, and that by this unlawful act, he had been the occasion of his death, and was guilty of contributory negligence.

Plaintiff introduced evidence tending to show that Langdon was in the car with the implied assent of the conductor of the train, but not of express consent or permission to ride there. It was held that a passsnger who voluntarily leaves his proper place in the passenger car of a railroad train, and rides in the baggage car or other place of danger, in violation of a known rule of the company, and is injured in consequence of such violation, can not recover damages for the injury, though the accident by which it was occasioned was the result of the negligence of the company, and that a railroad conductor can not, in violation of a known rule of his company, license a passenger to occupy a place of danger,—*e. g.*, the baggage car—and by such license render the company responsible for injury incurred by the passenger in consequence of his violation of the rule; and that a conductor can not waive a rule which, by its very terms, he is commanded to enforce; that he may neglect to enforce it, and if it is a mere police regulation, such neglect may amount to a waiver of it as between the passenger and the company, but not so when the rule is for the protection of human life, as is one prohibiting passengers from riding in places of increased danger.

In the opinion in the last case the Pennsylvania court draws a distinction between the violation of a rule whose object is the safety of passengers, and those which are merely for the comfort of passengers,

or for the convenience of the railroad company, ob-
serving that where the rule is for the convenience of
the company, the company will be liable unless the
violation of the rule caused the *accident*, whereas in
the other case it is sufficient to relieve the company
that the *injury* was received in consequence of the
violation of the rule; and this, notwithstanding the
fact that the negligence of the company's servants was
the cause of the accident.   The opinion also states
the distinction, and the want of any inconsistency, be-
tween Langdon's case and that of O'Donell vs. Alle·
gheny R. Co., 59 Penn. St., 239, the conclusion in
which case, it is said, was, on account of its facts,
mainly upon the ground that the plaintiff and his as-
sociates had been riding in the baggage car daily for
two months under circumstances which would justify
the jury in finding that their doing so was an arrange-
ment for the benefit of the company, rather than as
ordinary passengers; while on the other hand, Lang-
don "was riding in the baggage car for his own conve-
nience, and to have a chat with the baggage master,
with whom he appeared to have been intimate."   The
court also distinguishes the case of Lackawanna &
Bloomsburg R. Co. v. Chenewith, 52 Penn. St., 382,
as one where the rule violated had no relation to the
safety of the plaintiff as a passenger, the fact being
that the plaintiff induced some of the company's em-
ployes, in the absence of the superintendent, to at-
tach his freight car to a passenger train, in violation

of a rule of the company, he agreeing to run all risks and to attend to the brakes on his freight car; and that of Creed v. Pennsylvania R. Co., 86 Penn. St., 139, where the plaintiff was riding in a caboose car, in violation of the rules of the company, on a mixed passenger and freight train, but it did not appear that the rule was one intended for the safety of the passenger, and was not claimed that the car was a place of danger.

In Virginia M. R. R. Co. vs. Roach, 83 Va., 375, the plaintiff, Roach, knew, or from the fact that he had been for months, until recently, an employe of the defendant company, should have known, that its rules forbid any one except the engineer and fireman to ride on its engines, yet, upon the invitation of the engineer or conductor, he got on the engine, and while riding there the train was negligently thrown off the track and he was injured ; and the decision was that he could not recover.    See also Waterbury vs. N. Y. C. & H. R. R. Co., 21 Blatch, 314.

The doctrine of these authorities as to the absence of power in a conductor to waive rules intended for the safety of passengers is in effect approved in Beach on Contributory Negligence (2d Ed.), secs. 151-154, and Patterson's Railway Accident Law, 288-290.

There are, however, other authorities which need to be noticed : Hutchinson on Carriers, sec. 654, and Jacobus vs. S. P. & C. Ry. Co., 20 Minn., 125, and

Dunn vs. Grand Trunk Railway, 58 Maine, 187. The commentator named says : Even where the riding in such car is against the rules of the company, of which the passenger is informed, if he is in it with the knowledge of the conductor and without any attempt on his part to enforce the rule by removing the passenger, his presence there would not be such negligence as would exonerate the company from the consequence of its negligence or want of care. The doctrine of the stated Minnesota case, which he cites, seems to sustain his assertion, but the same can not be said of such of the other cases cited by him as are within our reach : Washburn vs. Nashville & Chattanooga Railroad Co., 3 Head, 638 ; Philadelphia & Reading R. R. Co. vs. Derby, 14 Howard, 468, for in neither of these was there any question of the effect of a rule like that in question, and, according to what is said in Pennsylvania Ry. Co. vs. Langdon, 92 Penn. St., 32, the same observation is true of Carroll vs. Railroad, 1 Duer, 571, a case not at hand, as it is of Baltimore & Ohio R. Co. vs. State, 92 Md., 36. Of the Minnesota case it may be observed that in McVeety vs. St. Paul, Minneapolis & Manitoba Ry. Co., 45 Minn., 268, where it was held that if a person knowingly induces the conductor of a railroad train to violate a rule of his company, and carry him without charge, he is guilty of a fraud on the company and can not claim the rights of a passenger, it is said, citing the second and third cases *supra*, from Texas, and other authorities, that

JUNE TERM, 1892.    27

Florida Southern Ry. Co. v. Walter J. Hirst.—Opinion of Court.

the same result follows if he rides upon a part of the train from which passengers are excluded, knowing that his act is against the rules of the carrier, and in permitting it the conductor is disobedient.   The case of Dunn vs. Grand Trunk Railway, *supra*, is one in which there was evidence tending to show that the plaintiff entered the saloon car attached to defendant's freight train ;  that the conductor saw him when the train started, and they conversed together ;  that he paid the conductor the usual fare ; that the saloon car was thrown from the track and plaintiff injured ;  and was also testimony tending to show that the conductor notified the plaintiff when the train started that he had no right to carry passengers, but this was denied by the plaintiff.   There were rules against passengers traveling on freight trains.   The verdict was for plaintiff, and it was affirmed.   Of this case it is properly said by the New York Court of Appeals, in Eaton vs. Delaware, Lackawanna & Western R. R. Co., *supra*, that it, in its precise facts, is not opposed to the conclusions of the New York Court in the case mentioned. That the Maine case was distinguishable from the other by payment of fare and the attachment of a "saloon car ;" that it was not stated precisely what the saloon car was ; that it might be assumed to be one fitted up for the accommodation of passengers, and the company might thus be assumed to have assented to a relaxation of its rules, and that the principle acted on was not to be extended beyond its precise facts.   The

Pennsylvania court remarks correctly of the same cause in Langdon's case, *supra :* "There was no point that it was a place of danger," adding "nor that the rule was intended for the safety of passengers." We will not go into any more critical examination of the Maine case, nor determine whether or not it should be regarded as having been treated, in the opinion of that court, as a case in which the passenger had no knowledge or notice of the rule. We will remark that in discussing the duty of passengers to comply with reasonable rules, and the effect of employes' waiver of such rules, it is observed by Mr. Beach, in the second edition of his work on Contributory Negligence, sec. 154, citing numerous authorities, that with respect to the carriage of passengers on freight trains the rule is somewhat modified to the effect that whenever the company receives passengers upon their trains and collects fare from them, although it is done in violation of a rule of the company, it is lawful for the passenger to ride, and if, while so riding, he suffers an injury due to the company's negligence, he may have his action; the relation of carrier and passenger being created, notwithstanding the rule, when the passenger is received on the freight train and allowed to pay his fare. An admission of the entire correctness of this proposition is, however, not inconsistent with our conclusions in the case before us, considering its facts.

The law requires of railroad companies the exercise of the highest degree of care for the safety of passengers traveling upon their trains. This care is not due

only to the individual as such, but it is also a public duty for the protection of the State's citizens. It would be a strikingly odd system of jurisprudence which, while exacting of the operators of this very dangerous, yet highly useful, means of transportation, the duty of extreme care towards those whom they undertake to carry, yet would refuse to permit such transportation companies to require of passengers that they, while being transported, shall confine themselves to the places provided for them as most conducive to their safety, and abstain from riding in parts of a train of greater danger, and set apart for other purposes. Such a system of law would present the hurtful incongruity of demanding a result indispensable to the safety of the traveling public, while in the same breath, inhibiting an essential of such result. The preservation of the life and limb of the passenger require that he shall conduct himself consistently with, and not in antagonism to the maintenance of his safety, and this duty involves that of observing all rules of the railroad company which may be reasonably necessary to his protection from harm. A rule which requires that passengers shall remain in the cars set apart for them, and shall not ride in a baggage or an express car, or other place of increased danger, is unquestionably reasonable, and is within the power of a railroad company. See also T. W. & W. Ry. Co. vs. Brocks, 81 Ill., 245, 250.

In view of the law as it is shown above to be, there was error in the following charge given to the jury: "If you believe from the evidence that the conductor

in charge of the defendant's train at the time of the accident knew that the plaintiff was traveling on the train the day the accident occurred, and before the accident occurred, and that the conductor knew that the plaintiff was in the express car and did not forbid his being there, then the court charges you that the plaintiff's being there at the time of the collision would not be contributory negligence on the part of of the plaintiff."

"If it is contrary to the rules of the defendant company for passengers on its passenger trains to ride in the express car on such trains, and if the conductor of such train knew that that was the company's rule, and that to ride in such express car was accompanied by greater danger than other portions of such train, then it becomes the duty of such conductor to look out for and prevent the riding of passengers in such express cars, if he has knowledge thereof ; and if he is cognizant thereof and permits passengers to thus ride in such express cars without taking any steps to prevent them, then the defendant company through such conductor or its agent is guilty of negligence in not taking the necessary steps to prevent its passengers from riding in such dangerous portions of its train, and is liable for any damages that may result to such passenger from a collision of such train with another of its trains while such passenger is thus riding."

Of the first of these instructions it is sufficient to say, as can safely be done, that its effect is to reject and entirely ignore the company's rule and the plain-

tiff's violation of it as constituting any defense to his action. The second charge makes the obligation upon passengers and the protection to a company, of a rule of this kind, even when it is known to the passenger, dependent upon the fidelity of the conductor where he knows that it is being violated; and under such instruction, the rule can be of no protection to the company unless, to say the very least, there is some effort on the part of the conductor to enforce it. In this view we do not concur. Our judgment, on the contrary, is that the public welfare and sound reasoning dictate that it should be held contributory negligence for a passenger to violate a known rule of this character, even with the permission, connivance or knowledge of the conductor, or without his protestation, where that officer is cognizant of both the rule and its infraction, if by the violation of such rule the passenger brings upon himself injury from which he would have escaped, notwithstanding that the negligence of the company produced the accident, had he remained in the passenger car set apart and offering space for his accommodation. Whether there may be an exception to this view in cases of persons of tender years, or other disqualifying characteristics, is not for us to say; the point is not before us; the plaintiff was at the time of the accident not only twenty years of age, but also had been an express messenger, on the defendant company's road, long enough to render him familiar with the increased danger of riding in an express

car next to the engine, over that incident to traveling in a passenger coach in the rear part of the train.

Of course as between the company and the conductor, it is the duty of the latter, as it is of any other agent, to enforce the rules of the company, but when a passenger voluntarily violates a reasonable rule, like that under consideration, which is for his preservation from harm, and brings upon himself injury which he would not otherwise have received, he not only can not find relief from the consequences of his own negligence in the omission of the conductor to do his whole duty; but besides this, where, knowing of such a rule, he goes from the passenger car into a place like that in question, which can not be regarded as intended for passengers, but naturally suggests that it is not for them, the burden is upon him to prove that he was justified in going there.

II. Though where the passenger suing knew at the time of the accident that there was a rule of this kind in force, he can not invoke the mere delinquency of a conductor in enforcing the rule, still it cannot be denied that there may be cases in which the conduct of the *company* has been such as to amount to an abandonment of the rule, or to preclude itself from claiming protection under it.

In Railway Co. vs. Moore, it is conceded, as shown above, that it *may* be true that where a railroad company habitually permits passengers to travel on its

freight trains, notwithstanding a regulation to the contrary, it will incur the same responsibility to such passengers as if they were on a regular passenger car. In Jones vs. Chicago, St. P. & M. R. Co., 43 Minn., 379, a case in which it was held that the presence of the plaintiff in the baggage part of the combination car was not, under the circumstances of the case or nature of the injury, contributory to his receiving the injury, there was evidence that passengers used the baggage compartment as a smoking room, and the jury found specially that the rule forbidding passengers to be there was not in force; and it was said by the Minnesota court that this finding, read in connection with the evidence, must mean that the rule posted up was not enforced, but was disregarded by the defendant and its servants; and that this being so, it was immaterial that the plaintiff had or had not notice that such a rule had been posted up. There was evidence that the rule had been posted up in the car, but it did not appear that the plaintiff saw or knew the rule. It was also previously observed that even though there was such a rule posted up, if it was not enforced, if the defendant, through its servants in charge, habitually disregarded the rule and permitted passengers to ride in the baggage compartment, so that the passenger might assume the rule to have become obsolete, it certainly could not treat the passenger as a wrong doer from passing through the bag-

3

gage compartment to reach the passenger division of the car on boarding the same. The facts in Waterbury vs. N. Y. C. & H. R. R. Co., 21 Blatch., 314, were that there was no express contract creating the relation of passenger and carrier between plaintiff and defendant, but on various prior occasions the plaintiff and other drovers, whose cattle were being transported between designated points, had been permitted by the employes of the railroad company to accompany their cattle by the same train, sometimes riding on the cars of the cattle train, and sometimes on the engine. At times the trains were delayed between these points, and the cattle required attention, and, as no employe of the defendant was assigned to looking after the cattle, it seemed to be assumed between the employes of the defendant and the drovers that the latter should look after their own cattle. Upon the occasion of the accident, the plaintiff and another drover got upon the engine, there being only box cars on the train, and the engineer inquired of them if they had cattle on the train, and being informed that such was the fact, he made no objection to their riding on the engine. The engine ran off the track in consequence of a misplaced switch, and plaintiff was injured. A rule of the company forbade its employes from permitting any person to ride on the engine. The conclusion of the court in this case was that the plaintiff was not entitled to be carried as a passenger as an implied condition of the contract to carry the

cattle, but the most that could be claimed, was that he was riding on the engine permissively. That the real question in the case was whether he was being carried on the engine with the consent of the defendant, or only by the unauthorized permission or invitation of the defendant's employes. That it should have been left to the jury to determine, as a question of fact, whether the defendant had by its conduct held out its employes to the plaintiff as authorized, under the circumstances, to consent to his being carried on the train with his cattle. That, in this case where the company may have derived some benefit from the presence of drovers upon its cattle trains, and may have allowed its employes in charge of such trains to invite or permit drovers to accompany their cattle, the presumption against a license to the person thus carried may be overthrown; and it should have been left to the jury to determine, as a question of fact, whether notwithstanding its rules for the government of its employes, the defendant had not held them out as having authority to consent to his being carried; and that if it should appear that its employes had been accustomed to allow drovers to accompany their cattle on the cattle trains, so generally and constantly that the officers of the company must have known it, the consent of the company might be predicated upon acquiescence and ratification.

In the case before us, the evidence as to the enforcement of the rule was as follows:· Hirst said the

express car is not the place where passengers usually ride. * * It is not a place where passengers usually ride, but it is a common occurrence for passengers to go into the express car to ride and talk with the agent. * * Yes, I knew the company claimed to have a rule that passengers should not ride anywhere but in the passenger cars, but it was never carried out; it was a frequent and common occurrence for friends of the express messenger to come into the express car and sit there and talk with the messenger, and passengers frequently went into the express car and sat around on the baggage and boxes in there, and smoked, and it was never objected to by the conductor. And the conductor Gamble testified: "It was against the rules of the company for passengers to ride in the express car, and Hirst knew it. * * Passengers frequently sit in the express car, and talk and smoke."

If the trial judge had, upon the basis of this testimony, submitted to the jury the question : whether or not the defendant company had by its conduct held out, to the plaintiff, its employes in control of the train as authorized, notwithstanding its rule, to consent to his riding in the express car; or whether its employes had been accustomed to allow passengers to ride in the express car so generally and constantly, that the officers of the company must have known it, and have acquiesced in the violation; or the question of there having been such continued and habitual

disregard of the rule by the employes as must have reasonably produced the belief that the company had practically abandoned its rule, there would still be a question as to the testimony being sufficient to sustain a finding against the company on such theory or theories. Certainly, where, as here, a passenger knows of the existence of such a rule, he can not rely upon any mere delinquency of the conductor or other agent charged with its enforcement; but on the contrary, there must be something which establishes the concurrence of the company in the disregard of the regulation. There has, however, not been even a submission to the jury of any such question, but the judge gave the case to the jury upon the theory that the virtue of the rule was dependent solely upon the fidelity of the conductor; and in this, as shown above, there was error.

III. In what is said above, we have not lost sight of the fact that when the defendant has inflicted the injury intentionally; or when he has done so unintentionally, yet his conduct, though still within the domain of negligence, has been wanton or reckless of its injurious consequences, or in other words, he has been guilty of what is now called, it may be inaptly, "wilful negligence," the contributory negligence of the plaintiff is not a defense. Beach on Contributory Negligence (2nd ed.), sections 61-64; Cooley on Torts (2nd ed.), 810; Palmer vs. Chicago, St. L. & P. R. R. Co., 112 Ind., 250; Brannen vs. Kokoma, G. & J. G.

R. Co., 115 Ind., 115; Banks vs. Highland Street Ry. Co., 136 Mass., 485; Donahoe vs. Wabash, St. Louis & P. Ry. Co., 83 Mo., 543; Gothard vs. Alabama Great Southern R. R. Co., 67 Ala., 114; Peoria and Rock Island R. R. Co. vs. Lane, 83 Ill., 448. Though such wanton or reckless conduct has sometimes been spoken of as "gross negligence," the term does not define it, nor is gross negligence confined to only such an extreme degree of negligence; Beach on Contributory Negligence, sections 61, 62; Milwaukee, etc., R. R. Co. vs. Arms, 91 U. S., 489; Chattanooga R. Co. vs. Liddell, 85 Ga., 482; and we are entirely satisfied that the term "gross negligence" was not used by the Circuit Judge in his charge in any such extreme sense, for had it been he would not have recognized contributory negligence as a defense, as he has done in charges not necessary to be set out here. Not only was the case not submitted to the jury for consideration by it in this light, but the facts are not such as would authorize an appellate court to say, as a matter of law, that it was one in which the defense of contributory negligence cannot have a standing; Brannen vs. Kokoma, G. & J. G. R. Co., *supra*; and to treat as harmless the errors pointed out above, and affirm the judgment.

IV. Exemplary damages can be allowed in cases of negligence, as distinguished from those of intentional injury, only where, as was said in Florida Railway & Navigation Co. vs. Webster, 25 Fla., 394, 419-21 ; 5

South. Rep., 714, and the authorities there cited, the negligence is of a gross and flagrant character evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects ; or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them. This being the rule, and the term "gross negligence" not being confined to this extreme degree of negligence, it is not proper to charge a jury simply that gross negligence will justify the imposition of such damages. It leaves the jury to its own ideas whatever they may be, as to what want of care constitutes the gross negligence authorizing the allowance of such damages. The character of negligence should, instead of using the term "gross negligence," be defined as indicated above, in order that the jury may understand in what cases such damages may be given or inflicted. Chattanooga R. Co. vs. Liddell, *supra.*

V. The testimony does not justify us in concluding that Hirst was attempting as claimed by counsel for appellant to obtain a ride without paying fare, and to this end was practicing a fraud or imposition on the conductor or the company, by passing himself off as express messenger returning to his "run." It is true there is testimony that up to six weeks before the day of the accident, he had been an express messenger and had run on the same train with the conductor who was

in charge of the colliding passenger train, but there is also testimony to the effect that he had left this employment, and, at the time of the accident, was engaged in other business at Tampa, and that on boarding the train he went into the passenger car, and that he had funds sufficient to pay his fare. The evidence, moreover, justified the jury in concluding that the conductor was aware of all this. The conductor did not ask him for his fare, and gives as a reason for not doing so, that he thought Hirst was in the employ of the express company. There was, however, nothing in the conduct of Hirst to throw upon him any blame for this omission of the conductor.

Under this evidence we cannot conclude that Hirst's presence or his purposes on the train were fraudulent, or that he at no time had the legal status of a passenger thereon. The actual payment of fare is not indispensable to such status. Ohio & Mississippi R. R. Co. vs. Muhling, 30 Ill., 9 ; Pennsylvania R. R. Co. vs. Books, 57 Penn. St., 339; Cleveland vs. New Jersey Steamboat Co., 68 N. Y., 306; Steamboat New World vs. King, 16 Howard, 469 ; Wilton vs. Middlesex Railroad Co., 107 Mass., 108 ; Philadelphia & Reading R. R. Co. vs. Derby, 14 Howard, 468 ; Sherman vs. Hannibal & St. Joseph R. R. Co., 72 Mo., 62 ; Toledo, Wabash & Western Ry. Co. vs. Beggs, 85 Ill., 80 ; Toledo, Wabash & Western Ry. Co. vs. Brooks, 81 Ill., 245.

The case is of course not one which involves the measure of the duty of a railroad company to an ex-

press messenger, or other employe of an express company, traveling in an express car and injured while in the due performance of his ordinary functions, through the negligence of the company or its agents.

There are other assignments of error, but they need not be noticed. What has been said above seems sufficient for future proceedings in the cause.

For the reasons indicated above, the judgment must be reversed, and it will be so ordered.