## HENDLER v. CLAUDE NOLAN, Inc.
### No. 59-852-L.

Circuit Court, Duval County.

December 3 and 14, 1959.

John B. Culp, Jr., Evans & Stewart, Jacksonville, for plaintiff.

Timothy P. Poulton, Howell, Kirby, Montgomery & Sauls, Jacksonville, for defendant.

WILLIAM H. MANESS, Circuit Judge.

*Order:* The question before this court on defendant's motion to dismiss plaintiff's amended complaint, and on which briefs have been submitted, is not the sufficiency of the complaint to state a cause of action against defendant in either count one or count two, but whether or not the allegations thereof are sufficient to support a claim for punitive or exemplary damages without which this case would not meet the jurisdictional requirements of this court and should be transferred to the civil court of record of Duval County pursuant to rule 1.39 of the rules of civil procedure.

Construing the allegations of the amended complaint in a light most favorable to plaintiff so as to find therein at least a jury question (if one exists) as to her claim for punitive damages, it may be said that on July 3, 1958 in negotiating for the purchase of a 1958 Pontiac from defendant, plaintiff laid down three requirements, to-wit — it must be (1) "factory perfect in condition", (2) "undamaged and unused" and (3) so new that it would be "figuratively 'wrapped in cellophane with a ribbon around it' ". It may further be said that defendant undertook to meet these requirements and gave assurances that the car to be sold and delivered to plaintiff was in fact — (1) "a standard quality, new automobile in factory perfect condition", (2) "undamaged and unused" and (3) "of good material and workmanship"; but that in truth and in fact, contrary to defendant's assurances and representations, the automobile actually delivered and sold by defendant to plaintiff was "a damaged 1958 Pontiac" which was also "defective in material and workmanship", which facts were well known to defendant and which plaintiff had no way of knowing or finding out prior to the purchase and delivery of the automobile. The original complaint was filed herein exactly one year later on July 3, 1959.

Plaintiff contends that the foregoing allegations make out a cause of action in tort for fraud and deceit, but this court is of the opinion that such allegations are essentially based on an alleged breach of contract sounding in tort. But assuming such allegations constitute an action ex delicto, it does not necessarily follow that punitive damages are recoverable.[1]

Construing count one of said complaint, hereinabove summarized, to be essentially a breach of contract sounding in tort, in such instances the Supreme Court of Florida has laid down the rule

---

[1] It has been distinctly held that even gross negligence will not justify the imposition of punitive damages. Florida Southern Railway Co. v. Hirst, 30 Fla. 1, 11 So. 506, 16 L.R.A. 631.

with respect to punitive damages in Griffith v. Shamrock Village, Inc., 94 So. 2d 854, at page 858, in the following language —

"The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant. But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort. 25 C.J.S. Damages, § 120, pp. 716-717."

The Supreme Court has further held that allowance of punitive damages in tort actions is dependent upon a showing of malice, moral turpitude, wantonness or outrageousness of the alleged tort. See Dr. P. Phillips & Sons, Inc. v. Kilgore, 1943, 152 Fla. 578, 12 So. 2d 465; Ross v. Gore (Fla. 1950), 48 So. 2d 412. See also Corbin on Contracts (Copyright, 1951), Volume 5, Section 1077, at pages 366 and 367. There, it is stated that —

" * * * It can be laid down as a general rule that punitive damages are not recoverable for breach of contract, although in certain classes of cases, there has been a tendency to instruct the jury that they may award damages in excess of compensation and by way of punishment. These cases, however, are cases that contain elements that enable the court to regard them as falling within the field of tort or as closely analogous thereto."

Such a case is Kress v. Soules, 255 S.W. 2d 244 (Tex. Civ. App. 1953), where Soules executed a contract to purchase real estate from Kress, after which Kress refused to consummate the sale according to the contract and advised Soules that he had sold the property to another man for more money and requested a release from the contract; thereafter, after Soules filed suit for specific performance and filed a notice of lis pendens, Kress conveyed the subject property to a third person prior to which Kress notified Soules that unless he was released from his contract, that he, Kress, would cloud the title and involve Soules in lengthy litigation, all of which the complaint alleged was in wanton disregard of Soules' rights under the contract and was malicious and willful.

Another example of such conduct as would constitute an independent tort is the case of Etter v. Von Sternberg, 244 S.W. 2d 321 (Tex. Civ. App. 1951), where a deputy court reporter sued the official court reporter on a contract for sums claimed to be due him for

work in connection with preparation and reporting of cases in the federal district court. The facts alleged in that case to support a charge of punitive damages were, and the jury so found, that under the contract which the plaintiff-reporter had with the defendant, plaintiff was to receive 60% of monies received by defendant for plaintiff's work, less typing costs, and that defendant had breached this contract by misrepresenting the actual amounts derived from work and concealing the number of copies sold.

In applying the foregoing principles to the facts alleged in plaintiff's complaint herein, it appears that the allegations of the representations with respect to "factory perfect in condition", "unused", and so new that it would be "figuratively 'wrapped in cellophane with a ribbon around it' ", as well as the alleged representations that the automobile was "a standard quality, new automobile in factory perfect condition", and "of good material and workmanship", must be regarded as no more than "puffing" or "trade-talk", insofar as such language is relied upon to support a claim for punitive damages. It is obvious to a layman that such standards cannot be achieved or expected of any mechanical device as complicated as an automobile as it is that a puncture-proof tire can go flat. The failure to deliver such an automobile after making such a written or implied guaranty cannot form a basis for the award of punitive damages any more than the representations that a stepladder will never break can support a cause of action for damages. See Lambert v. Sistrunk (Fla.), 58 So. 2d 434. This is not to say that such representations will not support an action for compensatory damages for breach of an express or implied warranty.

Having thus disposed of all the alleged misrepresentations, except that the automobile would be "undamaged" when, in fact, it was "a damaged 1958 Pontiac model", the sole question now remains as to whether or not that representation, standing alone, is sufficient to support an award of punitive damages. Plaintiff's complaint does not allege in what respect such automobile was damaged, and since the complaint does not allege that it had in fact been "used", it is reasonable to presume that the vehicle was damaged in transit or in defendant's shops. That modern methods and materials and the skills developed by expert repairmen are such that a damaged automobile may be restored to its original appearance is a fact of which the courts can take judicial notice, and when such work has been done, it is difficult, if not impossible, to ascertain that a repaired automobile has, in fact, been previously damaged. Where, as here, such is the case, this court is of the opinion that the representation that such vehicle is "undamaged" cannot be said to be such an intentional wrong, insult, abuse or gross negligence, as will amount

to an independent tort and does not show *that degree*[2] of malice, moral turpitude, wantonness or gross outrage so as to support an award of punitive damages. The alleged wrong in this case is a purely "private wrong" and falls short of being a "public wrong" for which public outrage justifies added damages by way of punishment and as a deterrent to others. Again, this is not to say that it will not support a cause of action for compensatory damages to the extent that the purchaser of such automobile can demonstrate that he or she has been damaged, all of which would, of course, take into consideration the nature and extent of the damage to the automobile, the alleged misrepresentation and the consequential damages flowing therefrom.

It is accordingly ordered and adjudged —

That defendant's motion to dismiss the amended complaint is denied, as to both counts one and two, and defendant shall have 20 days from the date hereof within which to answer the complaint.

That defendant's motion to strike plaintiff's claim for punitive damages is granted, and the following language is stricken from plaintiff's amended complaint, to-wit — "*Wherefore*, plaintiff demands exemplary and punitive damages in addition to compensatory damages in the amount of $10,000, plus interest and costs."

That unless within ten days good cause be shown why this cause should not be transferred to the civil court of record in and for Duval County, this court will, without further notice or hearing, order that said cause be transferred, pursuant to rule 1.39 of the rules of civil procedure.

*Order transferring cause to civil court of record:* It appearing from the order of this court entered December 3, 1959 that the above-entitled cause is pending in the wrong court, and it further

---

[2]The reason for this distinction between the degree or character of an act or omission which may support a claim for only compensatory damages and one which will justify both compensatory and punitive damages is well illustrated by Justice Drew of the Supreme Court of Florida in writing the opinion in Carraway v. Revell, 116 So. 2d 16, where he said— "There is a real affinity between the character (or kind or degree) of negligence necessary to recover punitive damages or to sustain or warrant a conviction of manslaughter. Both have, as a basic purpose, the punishment of the offender. The offender in a manslaughter action may be deprived of his liberty or property by the State while *the offender in an action for that kind of negligence justifying the imposition of punitive damages is deprived of his property—not as compensation to the injured party but as punishment*—ergo, both are punishment and partake of public wrongs, to a greater or less degree." (Italics added.)

108

appearing that plaintiff has failed to show any cause why this case should not be transferred to the civil court of record in and for Duval County, pursuant to rule 1.39 of the rules of civil procedure, within the ten days granted by said order of December 3, 1959, and the court being otherwise advised in the premises, it is ordered and adjudged that the clerk of this court be, and he is hereby, directed to transfer this cause and the file herein to the civil court of record in and for Duval County, in accordance with provisions of the rules of civil procedure.